Kenneth B. KROHN, Appellant,

v.

DEPARTMENT OF JUSTICE.

No. 79–1957.

United States Court of Appeals, District of Columbia Circuit.

May 16, 1980.

Rehearing Denied June 18, 1980.

---

**196**

Kenneth B. Krohn, pro se, was on brief, for appellant.

Charles F. C. Ruff, U. S. Atty., John A. Terry and Constance L. Belfiore, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before MacKINNON, ROBB and WALD, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

Appellant's Freedom of Information Act case requested the Department of Justice to produce: With respect to "each and every criminal case" in which judgment was entered pursuant to F.R.Crim.P. 32(b) during 1977 in the United States District Courts in:

> The Eastern District of Virginia (Alexandria Division),
>
> The District of Columbia, and
>
> The District of Massachusetts (Boston Division),

"the smallest set of records which will enable [him] to *conveniently* and *accurately* collect the following *information* about the cases:

> 1) The District Court docket number of the case and which District Court;
> 2) The name of the defendant;
> 3) The date on which judgment was entered;
> 4) The judgment imposed;
> 5) The name of the sentencing judge;
> 6) Whether or not the Government allocuted at sentencing in the case and, if so the recommendation, if any, to the judge with respect to sentencing;
> 7) The offense(s) (Citation to U.S.Code) of which the defendant was convicted;
> 8) The offense(s) (Citation to U.S.Code) with which the defendant was charged at the initiation of the criminal prosecution;
> 9) Whether or not the disposition of the criminal case involved a plea bargain and, if so, the terms of the plea bargain, including any agreement concerning the conduct of the Government at sentencing."

His original request was subsequently amended to add:

> "10) The name(s) of the attorney(s) for the defendant, including local counsel for the defendant, if any;
>
> 11) The name(s) of the attorney(s) for the United States."

As indicated above, his primary request is for the *"information"* described in (6) and (9), i. e., (1) for records indicating in *"each and every . . . criminal case"* whether the Government "allocuted at sentencing" and if so the Government's oral "recommendation" at that time; and (2) whether a "plea bargain" was involved, and if so the "terms" thereof "including any agreement concerning the conduct of the Government at sentencing." And his request is for records that will enable him to obtain such "information about the cases . . . *conveniently* and *accurately* . . .".

To this request the Criminal Division of the Department of Justice responded, as indicated by the affidavit filed in this Court, "that the statistics [Krohn] requested are not maintained by the Criminal Division." Affidavit of E. Ross Buckly, Freedom of Information Control Officer for the Criminal Division. He referred the request to the Executive Office for United States Attorneys, in the Department of Justice which responded as set forth in the affidavit of Leslie H. Rowe who was charged with the responsibility of processing such requests, i. e.:

6) The information requested by Mr. Krohn in his requests of May 17, 1978 and July 27, 1978 (Exhibits A & C attached) either does not exist at all, or does not exist in a form that, if collected, would be reliably accurate. In order to answer Mr. Krohn's requests we would have to create extensive new records which are not mandated by law and which have not been determined to be necessary or useful for the overall work of this agency.

(App. 17).

The Rowe affidavit further stated that any attempt to locate the information demanded by Krohn's request "would require the individual review of each criminal case and [index] cards document by document [for] . . . in excess of 5,000 different criminal cases". (App. 18).

11) And, the results of any such review would be inconclusive since there is no requirement that cases of this type be identified, or that all of the information Mr. Krohn requests kept in each such case; any information found would be incomplete, inaccurate and of questionable value.

12) For example, United States Attorneys (and Assistants) seldom allocute at sentencing. When they do, a record of it would normally only exist in the record of the court reporter (from whom it is rarely ordered), or in any handwritten notes the attorney for the government may have left in the case file folder, or made upon one of the cards. The same would be true to a large extent, of plea agreements as well.

(App. 19).

The Department's affidavits were not controverted and upon motion by the Government the Court granted summary judgment. Appellant attacks such judgment on the ground that it was not supported by the affidavits. We disagree. The uncontroverted record not only indicates that there was no genuine issue of material fact but also that the Department of Justice was entitled to judgment as a matter of law. F.R.Civ.P. 56(c).

Basically appellant's request is for *data* not records. As can be noted, his request is for highly-selective "information". In fact, appellant describes his action as an effort to obtain "Sentencing Statistics."

As the uncontroverted affidavits indicate the critical data, information and statistics that appellant requests for "each and every . . . criminal case" in the United States Attorney's Office for such districts is not to be found in the said offices or elsewhere. If the United States Attorney allocuted, as can be garnered from the Rowe affidavit, such fact is not "identified" in any system of records and it would be necessary to transcribe the reporter's notes in all such cases to determine whether the Government allocuted and if it did the position taken. Since sentencing proceedings are "rarely ordered," and hence they are not transcribed, the demand is for a non-existing record except in *rare* occasions. The same is true to a large extent of plea agreements—and we might add as a fact generally known in this jurisdiction and not subject to reasonable dispute, F.R.Ev. 201(a), (c), (f)—the location of any record of plea negotiations or agreements is widely varied. Plea agreements would be even more difficult to locate than government allocutions. Such agreements could crop up anywhere in a record beginning with the start of the case and ending with its final judgment, possibly years later. Also, such negotiations and agreements might never become the subject of any record, or might be the subject of the most casual "handwritten note" that might or might not appear in the "case file folder or [index] card."

Finally, the records described above, which Krohn demands, "are not mandated by law and [the Department of Justice has] . . . not . . . determined [that such records are] necessary or useful for the overall work of [the] agency." (App. 17). This case is thus determined by the holding of Justice White's opinion in *NLRB v. Sears Roebuck Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1945):

The [Freedom of Information] Act . . . only requires disclosure of certain docu-

ments which the law requires the agency to prepare or which the agency has decided for its own reasons to create. *Sterling Drug, Inc. v. FTC*, 146 U.S.App.D.C. 237, 450 F.2d 698 (1971). Thus, insofar as the order of the court below requires the agency to create explanatory material, it is baseless.[1]

421 U.S. at 162, 95 S.Ct. at 1522. The agency cannot be compelled to create the transcripts necessary to produce the data, information and statistics that appellant requested. *That the request is basically for selective information and not records is further indicated by appellant's request for "the smallest set of records." This would require selecting out information from all records. The demand for accurate information also reflects a demand for selective information, not designated records.*

It also appears that appellant's request is too vague to satisfy the statutory requirement that it reasonably describe the requested records. 5 U.S.C. § 552(a)(3)(A). A reasonable description requires the requested record to be reasonably identified as a record not as a general request for data, information and statistics to be gleaned generally from documents which have not been created and which the agency does not generally create or require. Here the request is so broad and general as to require the agency to review the entire record of "each and every . . . criminal case" in order to determine whether it contains any evidence of the data, information or statistics that appellant requests. Such request is fatally flawed by lack of a reasonable description. Cf. *Irons v. Shuyler*, 465 F.2d 608, 610–11 (D.C.Cir.1972), *cert. denied* 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664. The decision of the District Court is therefore affirmed.

*Judgment Accordingly.*

WALD, Circuit Judge, dissenting:

I dissent on the ground that Krohn's request was not so unfocused or burdensome,

as the majority opinion asserts, as to justify summary rejection either because it required the creation of new records, or because it failed to adequately describe the records sought. Krohn's FOIA request was specifically for "the smallest set of records" which would allow him to collect the data he seeks, App. I at 21, and Krohn later asserted he would take whatever records exist, even if they are "fragmentary and inaccurate." *Id.* at 28. Thus, I find it impossible to conclude in this setting that Krohn's request asked the government to create documents. Krohn also offered to limit his request to the criminal sentencing cases for 1977 of a single district judge, if the government would further substantiate its claims of burden in the Rowe affidavit. In these circumstances, I cannot find that the government's burden of responding to Krohn's request justified denying that request, or that his request was so vague that *Irons v. Schuyler*, 465 F.2d 608 (D.C.Cir.), *cert. denied*, 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972), sanctioned its denial.

The government has not, contrary to the opinions of the majority and the district court, asserted that absolutely no documents responsive to Krohn's request exist. The Rowe affidavit in fact indicates that some documents do exist, they just "[do] not exist in a form that, if collected, would be reliably accurate." App. I at 17. The government's brief also admits that some of the data Krohn requested could be located but asserts that documents relating to plea bargaining and allocution "simply do not exist because there is no requirement that such records be separately maintained." Gov't Br. 11 n.6 (emphasis supplied). The fact that records need not be maintained does not of course establish they do not exist, and in fact the government goes on to admit that some plea bargaining and allocution information may be in its files but

---

**1.** In *Renegotiation Board v. Bannercraft Co.*, 415 U.S. 1, 5, 7, 94 S.Ct. 1028, 1031, 1032, 39 L.Ed.2d 123 (1974) the Court left open whether the demand was so vague as not to constitute a request for identifiable records. Included with-

in this suspect category was a request to *identify* certain parties whose costs had been compared with Bannercraft's—obviously for "information".

argues that its release "would not be responsive to appellant's request for all the listed information from each and every file." *Id.* I can find no basis in the FOIA or elsewhere, however, for withholding data contained in some files simply because it is not present in others.

Because neither the Rowe affidavit nor the government's brief establishes that no responsive documents exist, and because of the way Krohn has couched his request, I find the reasoning in *Disabled Officer's Ass'n v. Rumsfeld*, 428 F.Supp. 454 (D.D.C. 1977), *aff'd without opinion*, 574 F.2d 636 (D.C.Cir.1978), instructive. The names and addresses the Association requested in that case were available on various personnel and other records in the Defense Department, but because all of them were not on a single document, the Department argued that the Association had "not requested an identifiable agency *record* within the meaning of the FOIA." 428 F.Supp. at 456 (emphasis in original). That argument was rejected:

> Plaintiff is not attempting to use the FOIA to force defendants to create a record which they do not already have, and its request is one for an existing record within the meaning of the Act. If the Department of Defense did not maintain records on retired disabled officers, then plaintiff's request could be seen as an attempt to compel defendants to compile information they do not possess and *Renegotiation Board v. Grumman Aircraft Engineering Corp., supra*, would have more applicability to this case. However, defendants have stated that the Department of Defense has personnel and financial records pertaining to retired disabled officers, and plaintiff is only requesting them to disclose a limited portion of, or amount of information from these files, the names and addresses of the retired disabled officers. The fact that defendants may have to search numerous records to comply with the request and that the net result of complying with the request will be a document the agency did not previously possess is not unusual in FOIA cases nor does this preclude the applicability of the Act.

*Id. Cf., Ditlow v. Schultz*, 517 F.2d 166 (D.C.Cir.1975); *Wine Hobby USA, Inc. v. IRS*, 502 F.2d 133 (3d Cir. 1974).

I would remand for further explanation by the government as to why it cannot produce at least some of the documents Krohn requested.