# Illinois Official Reports

## Appellate Court

---

*Chicago Tribune Co. v. Department of Financial & Professional Regulation*,
2014 IL App (4th) 130427

---

| | |
|---|---|
| Appellate Court Caption | CHICAGO TRIBUNE COMPANY, Plaintiff-Appellee, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; and DONALD W. SEASOCK, in His Official Capacity as Acting Director of the Division of Professional Regulation, Defendants-Appellants. |
| District & No. | Fourth District<br>Docket No. 4-13-0427 |
| Filed | March 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action under the Freedom of Information Act against the Department of Financial and Professional Regulation, the trial court erred in granting summary judgment for plaintiff newspaper as to its request for the number of initial sexual misconduct claims received by the Department against multiple named physicians licensed by the Department, since granting plaintiff's request would require the Department to create a record the Department did not maintain and was not required to maintain by law; therefore, the trial court's decision was reversed and the cause was remanded with directions to enter summary judgment for defendants. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-167; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

| Counsel on Appeal | Thomas P. Schanzle-Haskins (argued), of Brown, Hay & Stephens, LLP, of Springfield, for appellants. |
| | |
| | Donald M. Craven and Esther J. Seitz (argued), both of Donald M. Craven, P.C., of Springfield, for appellee. |

| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Turner and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1    On February 25, 2010, plaintiff, Chicago Tribune Company, requested defendants, the Department of Financial and Professional Regulation (Department) and Donald W. Seasok, in his official capacity as acting director of the division of professional regulation, to disclose the number of initial claims received by the Department against multiple named physicians licensed by the Department. The Department denied plaintiff's request. On April 18, 2011, plaintiff filed a declaratory judgment complaint in the circuit court of Sangamon County pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/11(a) (West 2010)). The parties filed cross-motions for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)). On May 16, 2012, the circuit court entered a written order granting plaintiff's motion for summary judgment and denying the Department's motion for summary judgment.

¶ 2    The Department appeals, arguing the circuit court erred by granting summary judgment in plaintiff's favor. We reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4    On April 18, 2011, plaintiff filed a complaint for declaratory relief (735 ILCS 5/2-701 (West 2010)) in the circuit court of Sangamon County pursuant to section 11(a) of FOIA (5 ILCS 140/11(a) (West 2010)), alleging the Department improperly withheld "the *number* of claims or informal complaints filed against each of the identified physicians." (Emphasis in original.) The complaint and attached exhibits demonstrate the following.

¶ 5    On February 25, 2010, plaintiff submitted two FOIA requests to the Department. In the first request, plaintiff sought the following: (1) "[t]he number of license holders overseen by the [D]epartment's 'medical prosecutions' unit who have ever been identified by the [Department] as sex offenders *** and not just during your most recent comparisons of [Illinois] professional license-holders and registered sex offenders"; (2) "[t]he names of those medical professionals who were identified as sex offenders"; (3) "[t]he total number of 'initial claims,' the total number of 'complaints,' and the total number of 'formal complaints' that have ever been issued against each of these sex offenders"; (4) "[t]he dates of these claims,

- 2 -

complaints, and formal complaints, how they were resolved, and when"; (5) "[w]hat type of disciplinary action was taken against medical license holders for sex crimes convictions and when"; and (6) "[t]he number of claims of sexual misconduct of any kind that have been made against medical license-holders that fall under the 'Medical prosecutions' unit since 2000."

¶ 6        The second FOIA request named nine individual "license-holders" whose licenses had been suspended or revoked for various acts of sexual misconduct. Most held a physician and a surgeon license. Plaintiff sought one or more of the following regarding each individual: (1) a timeline of each case "going back to the initial 'claim' *** including what actions were taken and when"; (2) a copy of the "formal complaint"; (3) a copy of the order and notice of suspension or revocation, and any transcripts; (4) the "number of other claims, complaints and formal complaints" filed against each individual, when each claim, complaint, and formal complaint was made, and how and when each claim, complaint, and formal complaint was resolved; (5) "[w]hether the [D]epartment aware [*sic*] of any criminal charges ever faced by [each individual]"; and (6) the dates on which the Department was notified of a criminal charge and/or criminal conviction specific to each named individual.

¶ 7        On March 22, 2010, the Department sent plaintiff a response to plaintiff's second FOIA request. The Department provided plaintiff information and documents specific to "all the cases in which a Formal Complaint was filed against [each individual named in the second FOIA request]." However, the Department denied plaintiff's request for information regarding "additional claims and complaints made against these licensees," maintaining the information was exempt from disclosure under section 7 of FOIA. Further, the Department asserted "information regarding the Department's awareness of criminal charges against these licensees is maintained in the Department's investigative files," and investigative files are also exempt from disclosure under section 7 of FOIA.

¶ 8        On April 6, 2010, the Department responded to plaintiff's first request "regarding statistics about sex offenders and sexual misconduct." The Department provided plaintiff a list of 17 individuals, their professional license numbers, case numbers associated with each individual, the date each case was opened, and the status of the individual's license. "Regarding the other, more general information" requested, the Department stated it did not maintain the information in an "accessible format."

¶ 9        On April 21, 2010, plaintiff sought administrative review of the Department's denial with the Attorney General's Public Access Counselor. See 5 ILCS 140/9.5 (West 2010). Plaintiff stated it sought only (1) "the numbers of claims and complaints" against each individual identified in the Department's April 6, 2010, response to plaintiff's FOIA request, when the claims and complaints were made, and how and when they were resolved"; and (2) "the numbers of claims and complaints" made against licensed medical professionals identified by the Department as sex offenders. Plaintiff no longer sought "the other information the Department refused to provide."

¶ 10        On May 11, 2010, the Department responded to plaintiff's request for review, stating the Department provided plaintiff information regarding the filing of formal complaints against the various license holders at issue but refused to disclose information regarding initial claims and complaints that did not result in the filing of a formal complaint. The Department asserted initial claims and complaints, including the number of initial claims and complaints received against the individual license holders, could not be separated from an investigation; and information gathered by the Department during an investigation was exempt from disclosure under section 7 of FOIA.

- 3 -

¶ 11    In a letter to the Public Access Counselor dated June 11, 2010, plaintiff stated "[t]he only question at issue here is whether the numbers [of initial claims and complaints against individual license holders] are protected."

¶ 12    On October 15, 2010, the Public Access Counselor issued a letter finding the Department "failed to sustain its burden of establishing that disclosure of the *number* of Initial Complaints filed against a specific physician is exempt" under FOIA. (Emphasis in original.)

¶ 13    As stated above, plaintiff filed the instant proceeding on April 18, 2011, a complaint in the circuit court of Sangamon County pursuant to section 11(a) of FOIA (5 ILCS 140/11(a) (West 2010)), alleging the Department improperly withheld "the *number* of claims or informal complaints filed against each of the identified physicians." (Emphasis in original.) On June 27, 2011, the Department filed its answer to plaintiff's complaint, stating as affirmative defenses, the Department (1) is not required to prepare the types of records sought by plaintiff and (2) does not "in the ordinary course of business, maintain or generate records showing the number of claims or informal complaints filed against an individual licensee."

¶ 14    On December 1, 2011, the Department filed a motion for summary judgment asserting (1) the Medical Practice Act of 1987 (225 ILCS 60/36 (West 2010)) prohibited the Department from disclosing the number of initial claims and complaints against individual license holders; (2) the Seventh Circuit Court of Appeals' decision in *Fleury v. Clayton*, 847 F.2d 1229, 1232 (7th Cir. 1988), recognized a protectible interest in "a blemish-free license to practice medicine"; and (3) the Department does not keep "the records sought" by plaintiff in the ordinary course of business and FOIA does not require the Department to prepare the records sought by plaintiff. In support of its position, the Department attached the affidavit of Alison Perona, the deputy director of statewide enforcement for the Department. In her affidavit, Perona attested to the following:

"10. When an initial claim is received by the Department, a file is opened and given a file number. The file may include a single initial claim or multiple initial claims. Subsequent initial claims may be placed in an already open file, depending upon the type and nature of the claim or a new file may be opened. On occasion, files involving separate initial claims may be merged into a single file. Multiple files may be opened involving the same physician licensed under the [Medical Practices] Act.

***

12. In our computerized record keeping system, the Department has a record and can retrieve the numbers of files associated with a named licensee under the Act. This record will not, however, provide the number of initial claims or complaints contained in the file concerning that particular licensee. In order to make that determination, employees of the Department would be required to review each paper file bearing the name of a particular physician. In order to do this, it would be necessary to retrieve the files kept in a [*sic*] the records of the Department and examine all of the documents in the files in order to determine the number of initial claims or the number of complaints included in that file for the identified physician. There may be multiple files for a single physician. Such file investigations are not conducted in the ordinary course of business in the Department.

13. Conducting the file examination described would entail a manual hand examination of each paper file and would be extremely labor intensive and would

involve extensive file examination by employees of the Department which is not conducted by the Department in its ordinary course of business.

14. The Department maintains no recordkeeping system which can produce a list of the number of 'initial complaints' or 'complaints' as defined in the regulation."

¶ 15        On April 23, 2012, plaintiff filed its response to the Department's motion for summary judgment and a cross-motion for summary judgment, in which it asserted plaintiff sought only records showing the number of initial claims filed with the Department against the named physicians disciplined for committing various acts of sexual misconduct.

¶ 16        On May 16, 2012, the circuit court entered a written order granting plaintiff's motion for summary judgment and denying the Department's motion for summary judgment. The court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), and the Department appeals.

¶ 17                                II. ANALYSIS

¶ 18        The Department argues the circuit court erred by granting summary judgment in plaintiff's favor because the number of initial claims received by the Department against each named physician is exempt from disclosure. Specifically, the Department argues (1) the Medical Practice Act of 1987 (225 ILCS 60/36 (West 2010)) prohibits the Department from disclosing "the 'number' of claims or informal complaints" received by the Department against each of the named physicians; (2) FOIA does not require the Department to prepare the records sought by plaintiff and the Department does not keep the records in the ordinary course of business; and (3) the Seventh Circuit Court of Appeals' decision in *Fleury*, 847 F.2d at 1232, recognizes a protectible interest in "a blemish-free license to practice medicine."

¶ 19        "Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 17, 990 N.E.2d 1144 (quoting 735 ILCS 5/2-1005(c) (West 2010)). "Where the parties file cross-motions for summary judgment, as they did in this case, they agree that only a question of law is involved, and they invite the court to decide the issues based on the record." *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 25, 979 N.E.2d 22. We review a trial court's grant of summary judgment *de novo*. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007).

¶ 20        The purpose of FOIA "is to open governmental records to the light of public scrutiny." *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378, 538 N.E.2d 557, 559 (1989). Accordingly, under FOIA, "public records are presumed to be open and accessible." *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407, 680 N.E.2d 374, 377 (1997). This legislative intent is set forth by the General Assembly in section 1 of FOIA:

        "The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act.

        This Act is not intended to cause an unwarranted invasion of personal privacy, nor to allow the requests of a commercial enterprise to unduly burden public resources, or

to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information.

This Act is not intended to create an obligation on the part of any public body to maintain or prepare any public record which was not maintained or prepared by such public body at the time when this Act becomes effective, except as otherwise required by applicable local, State or federal law.

Restraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed in accordance with this principle." 5 ILCS 140/1 (West 2010).

¶ 21 We first address the Department's argument that the circuit court erred in granting plaintiff summary judgment where the Department does not maintain the number of initial claims received against individual physicians and it has no duty to compile information to satisfy a FOIA request. Plaintiff contends the Department waived "this so-called affirmative defense" because the Department did not raise this argument in its denial letters, "nor during the administrative proceeding before the *** Public Access Counselor."

¶ 22 Section 9(a) of FOIA provides if a public body denies a request for public records, it must notify the requestor in writing and explain in detail the reasons for the denial. 5 ILCS 140/9(a) (West 2010). Here, the Department provided plaintiff written notice of denial on March 22, 2010, and April 6, 2010. Upon receipt of a written notice of denial, "FOIA provides [a requestor] two distinct and mutually exclusive avenues *** to seek relief from a public body's denial of a FOIA request." *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, ¶ 53, 992 N.E.2d 629. First, an individual whose request for public records is denied may file a request for review with the Public Access Counselor in the Attorney General's office, who "shall determine whether further action is warranted." 5 ILCS 140/9.5(a), (c) (West 2010). The Public Access Counselor may resolve a request for review by mediation, by issuing a binding opinion, or "by a means other than the issuance of a binding opinion." 5 ILCS 140/9.5(f) (West 2012). Only a binding opinion is considered a final decision of an administrative agency subject to administrative review. 5 ILCS 140/11.5 (West 2010).

¶ 23 An individual whose request for public records is denied may also file an action in the circuit court for injunctive or declaratory relief. 5 ILCS 140/11(a) (West 2010). The circuit court considers the matter *de novo* and has the power to enjoin a public body from withholding public records. 5 ILCS 140/11(d), (f) (West 2010).

¶ 24 Here, plaintiff first sought review of the Department's denial under section 9.5 of FOIA. The Public Access Counselor did not issue a binding opinion subject to administrative review. Plaintiff next sought review of the Department's denial under section 11 of FOIA, filing the instant complaint in the Sangamon County circuit court alleging the Department improperly withheld "the *number* of claims or informal complaints filed against each of the identified physicians." (Emphasis in original.) The Department filed its answer to plaintiff's complaint, stating as affirmative defenses, the Department (1) is not required to prepare the types of records sought by plaintiff and (2) does not "in the ordinary course of business, maintain or generate records showing the number of claims or informal complaints filed against an individual licensee."

¶ 25    Section 11(f) of FOIA mandates that the circuit court conduct a *de novo* review:

"In any action considered by the court, the court shall consider the matter de novo, and shall conduct such in camera examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld *under any provision of this Act*. The burden shall be on the public body to establish that its refusal to permit public inspection or copying is in accordance with the provisions of this Act." (Emphasis added.) 5 ILCS 140/11(f) (West 2010).

We find no mention of waiver in the statute and do not believe waiver applies under these facts.

¶ 26    Section 11(f) unambiguously provides for *de novo* review to determine if the records sought may be withheld under any provision of FOIA. See *Kopchar v. City of Chicago*, 395 Ill. App. 3d 762, 770, 919 N.E.2d 76, 83 (2009) (additional exemptions relied upon by a public body in its summary judgment motion were not waived because they were not cited in its denial letters; section 11(f) of FOIA mandates the circuit court conduct a *de novo* review). The cases plaintiff cites in support of its waiver argument do not support a different result. Accordingly, we find the Department did not waive its argument that the circuit court erred in granting plaintiff summary judgment where the Department does not maintain the number of initial claims received against individual license holders and it has no duty to compile information to satisfy a FOIA request.

¶ 27    Before addressing the merits of the Department's argument, we note our difficulty in determining the exact nature of plaintiff's request to the Department at issue in this appeal. In its February 25, 2010, FOIA requests, plaintiff sought (1) "[t]he total number of 'initial claims', the total number of 'complaints', and the total number of 'formal complaints' that have ever been issued against each of these sex offender professionals, and not just those related to the sex crimes for which they were convicted"; (2) "[t]he dates of these claims, complaints, and formal complaints, how they were resolved and when"; (3) "[t]he number of claims of sexual misconduct of any kind"; and (4) "the number of other claims, complaints and formal complaints made against [a named licensee] with [the] department, when they were made, and how and when they were resolved."

¶ 28    In its request for review by the Public Access Counselor, dated April 21, 2010, plaintiff characterized "Request No. 1, [as] solely *** the numbers of claims and complaints, when they were made, and how and when they were resolved" and "Request No. 2 [as] solely *** the numbers of claims and complaints." Then, in its June 11, 2010, letter to the Public Access Counselor, plaintiff stated it sought only "the *number*, nothing more, of claims and informal complaints against doctors." (Emphasis in original.)

¶ 29    In its complaint before the circuit court, filed on April 18, 2011, plaintiff stated it had made clear in its request for review "that it had narrowed its request to the *number* of claims or informal complaints filed against each of the identified physicians." (Emphasis in original.) Yet, in its memorandum of law in support of its cross-motion for summary judgment, plaintiff stated it sought "records showing the number of initial claims filed against twenty-two specific physicians *** disciplined for committing various acts of (sexual) misconduct," and in the following sentence, plaintiff requested "only the number of initial claims filed with [the Department]–not their substance or contents."

¶ 30    Before this court, plaintiff states its request "was all along, a request for records showing the number of initial claims the Department received for a set of 22 physicians." Plaintiff then characterizes its request as a "release of records," a request for documents, and "[t]o be clear,

[plaintiff] is merely seeking an accounting of public official's [*sic*] ministerial acts. That is, the number of initial claims received."

¶ 31 FOIA provides a right of access to "public records." Pursuant to section 3(a) of FOIA, "[e]ach public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Section 7 of this Act." 5 ILCS 140/3(a) (West 2010). "Public records" are defined by FOIA as "all records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, cards, tapes, recordings, electronic data processing records, electronic communications, recorded information and all other documentary materials pertaining to the transaction of public business, regardless of physical form or characteristics, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2010).

¶ 32 Through its various filings in the trial court and this court, it is apparent plaintiff does not seek production of "public records" as that term is defined in FOIA, but requests the Department to perform a review of its investigative files and prepare a tally as to the number of initial claims made against certain license holders. FOIA is not "intended to create an obligation on the part of any public body to maintain or prepare any public record which was not maintained or prepared by such public body at the time when this Act becomes effective, except as otherwise required by applicable local, State or federal law." 5 ILCS 140/1 (West 2010). As the Department notes in its brief, plaintiff's request is more akin to an interrogatory in a civil action than a request for records brought pursuant to FOIA.

¶ 33 A request to inspect or copy must reasonably identify a public record and not general data, information, or statistics. *Kenyon v. Garrels*, 184 Ill. App. 3d 28, 32, 540 N.E.2d 11, 13 (1989) (quoting *Krohn v. Department of Justice*, 628 F.2d 195, 198 (D.C. Cir. 1980)). FOIA "does not compel the agency to provide answers to questions posed by the inquirer." *Kenyon*, 184 Ill. App. 3d at 32, 540 N.E.2d at 13 (citing *Krohn*, 628 F.2d 195). In *Kenyon*, the plaintiff requested, pursuant to FOIA, "information concerning the amount of money expended by the township in its lawsuit against him." *Kenyon*, 184 Ill. App. 3d at 30, 540 N.E.2d at 12. The township clerk sent the plaintiff copies of payment vouchers for legal services and a letter stating the bills for legal services did not contain the hours worked, only the amounts due. *Kenyon*, 184 Ill. App. 3d at 30, 540 N.E.2d at 12. The plaintiff filed a complaint alleging the township violated FOIA where it did not provide "all the records and bills related to fees and hours of [counsel's] employment." The township denied withholding public records, stating all records had been provided to the plaintiff. *Kenyon*, 184 Ill. App. 3d at 31, 540 N.E.2d at 12. The circuit court found the request for answers to questions concerning rates of pay was not a proper request as FOIA did not require the township to prepare answers to questions. *Kenyon*, 184 Ill. App. 3d at 31, 540 N.E.2d at 12. The plaintiff appealed, arguing his requests were for documents or records, were in proper form, and the three bills filed with the township's answer established the township violated FOIA. *Kenyon*, 184 Ill. App. 3d at 31, 540 N.E.2d at 12.

¶ 34 This court found "[i]f a document exists stating itemized fees for legal services, it would be subject to [FOIA]." *Kenyon*, 184 Ill. App. 3d at 32, 540 N.E.2d at 13. However, the *Kenyon* court noted FOIA (1) "is not designed to compel the compilation of data the governmental body does not ordinarily keep" and (2) "does not compel the agency to provide answers to questions posed by the inquirer." *Kenyon*, 184 Ill. App. 3d at 32, 540 N.E.2d at 13 (citing *Krohn*, 628 F.2d 195). Further, the *Kenyon* court, quoting *Krohn*, stated:

" 'A reasonable description requires the requested record to be reasonably identified as a record not as a general request for data, information and statistics to be gleaned generally from documents which have not been created and which the agency does not generally create or require.' " *Kenyon*, 184 Ill. App. 3d at 32, 540 N.E.2d at 13 (quoting *Krohn*, 628 F.2d at 198).

¶ 35 This court held "[t]ownship officials were not obligated under the terms of [FOIA] to answer plaintiff's general inquiry questions concerning rates of payment, since this would have required creation of a new record [citation] or answering of questions based upon information not contained in any record." *Kenyon*, 184 Ill. App. 3d at 32-33, 540 N.E.2d at 13. Further, the *Kenyon* court found the plaintiff's request for information about payment rates did not identify documents which he wished produced or made available and, thus, was not in proper form. *Kenyon*, 184 Ill. App. 3d at 33, 540 N.E.2d at 13.

¶ 36 In the instant case, plaintiff essentially requested the Department to compile "the number of initial claims the Department received for a set of 22 physicians." The Department advised plaintiff it did not maintain a record of the number of initial claims received against individual license holders. The Department was not obligated under FOIA to answer plaintiff's "general inquiry question" concerning numbers of initial claims since this would have required creating a new record. See *Kenyon*, 184 Ill. App. 3d at 32, 540 N.E.2d at 13.

¶ 37 Because plaintiff's request for the number of initial claims received by the Department against a named physician would have required the Department to create records it did not maintain or was not required to maintain by law, we find the circuit court erred by granting summary judgment in plaintiff's favor and, therefore, reverse the circuit court's judgment. As a result, we need not address the Department's alternative arguments for denying plaintiff's request.

¶ 38                                    III. CONCLUSION
¶ 39 For the reasons stated, we reverse the Sangamon County circuit court's judgment and remand the cause for entry of an order granting defendants' motion for summary judgment and denying plaintiff's cross-motion for summary judgment.

¶ 40 Reversed and remanded with directions.