NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210667-U

NO. 4-21-0667

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| TRENT JACOB WARREN, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| THE DEPARTMENT OF CORRECTIONS, | ) | No. 21MR26 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Christopher G. Perrin, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding the circuit court properly dismissed the plaintiff's complaint because he failed to state a cause of action under the Illinois Freedom of Information Act.

¶ 2    Plaintiff, Trent Jacob Warren, appeals from the Sangamon County circuit court's dismissal of his complaint under the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/11 (West 2020)), which alleged defendant, the Illinois Department of Corrections (Department), improperly denied several of his requests for public records. Warren argues the circuit court erroneously dismissed his complaint because it sufficiently stated a claim the Department violated FOIA in denying his requests for records. The Department argues the court properly allowed its motion to dismiss Warren's complaint. We affirm the circuit court's judgment.

¶ 3                          I. BACKGROUND

¶ 4                              A. Warren's FOIA Requests

¶ 5        Warren is an individual residing at the Pinckneyville Correctional Center (Pinckneyville) in the custody of the Department. Between October 2019 and July 2020, Warren filed six requests for records with the Department, which we summarize chronologically below.

¶ 6        In October 2019, Warren filed a FOIA request with the Department seeking temperature monitoring records from the chief engineer's office of Lawrence Correctional Center (Lawrence) for "every hour" for two housing units at Lawrence. Warren specifically requested "computer printouts showing the temperature at each building for every hour of each day." In response, the Department notified Warren it did not "maintain or possess records responsive" to his request.

¶ 7        On March 6, 2020, Warren requested two reports from Pinckneyville. Specifically, Warren requested (1) monthly "health and safety" reports from the years 2019 to 2020 and (2) "building inspection reports" from 2019. The Department denied respondent's request, asserting the materials requested were exempt from disclosure under FOIA because they were prepared for internal audits of public bodies.

¶ 8        On April 21, 2020, Warren requested (1) copies of all FOIA requests denied in 2020, (2) "information of why psychotropic meds Effexor was banned from [the Department] and its short term and long term side effects," and (3) a copy of his current FOIA request. In response, the Department asked Warren to clarify whether he sought copies of the denials of his own FOIA requests or the denials of all requests that occurred in 2020. The Department further requested Warren to narrow the time period to a specific range to facilitate locating the requested records. The Department then explained Warren's "general request" for "information" on

Effexor did not reasonably identify a public record but provided Warren a copy of his current FOIA request.

¶ 9    On June 11, 2020, Warren requested records from Menard Correctional Center (Menard). Warren requested Menard's (1) monthly health and sanitation reports for 2017, April 2020, and May 2020 and (2) copies of the denials of his own FOIA requests from 2020, the originals of those requests, and the original of his current request. The Department provided Warren copies of his FOIA requests from 2020 with the exception of four requests which it had already sent previously. The Department did not provide Warren with the denials of those requests, explaining it had already sent Warren those documents. The Department further denied Warren's request for the health, safety, and sanitation records from Menard, asserting they were exempt from disclosure under FOIA because they were materials prepared for internal audits of public bodies.

¶ 10    In July 2020, Warren requested (1) all records and staff operating procedures and policies regarding inmate property, specifically protocols for when an inmate is unable to pack his own property and (2) copies of the Department's denials of two of his previous FOIA requests. In response to the first request, the Department provided Warren with a Pinckneyville institutional directive titled, "Use and Control of Offender Storage Boxes." The Department did not provide the relevant administrative directive, asserting the record was exempt from disclosure under FOIA because it was available to Warren in the correctional center library. The Department denied Warren's second request because it had previously mailed him copies of those documents.

¶ 11    Also in July 2020, Warren requested all "protocol[s] and policies regarding video camera footage" from Department prison cameras; rules and protocols regarding maintenance,

retention, and disposal of video camera footage; and the parties responsible for keeping those records. Warren additionally requested information regarding "rules and staff protocol[s] of grievances and grievance officer routine[s] regarding investigation of their complaint of grievances." The Department responded that (1) it did not maintain or possess records responsive to the former request and (2) the latter request did not reasonably identify a public record.

¶ 12                                    B. Requests for Review

¶ 13            In each of its responses to Warren's six aforementioned FOIA requests, the Department stated Warren could seek review of each denied request by filing an action in court under section 11 of FOIA (5 ILCS 140/11 (West 2020)), or by requesting review from the Public Access Counselor (PAC) under section 9.5(a) of FOIA (5 ILCS 140/9.5(a) (West 2020)). The Department indicated respondent was required to attach a copy of his original FOIA request and the corresponding denial letter in a request for review by the PAC.

¶ 14                                    1. *PAC Review and Complaint*

¶ 15            Warren sought PAC review of each of the Department's denials of his requests for records. The PAC declined to review Warren's March 2020 and two July 2020 FOIA requests because he failed to include copies of his underlying FOIA requests within the 60-day period to submit his requests for PAC review, citing section 9.5(a) of FOIA (5 ILCS 140/9.5(a) (West 2020)). The PAC determined that no further inquiry was warranted regarding the other three requests, indicated it would resolve the requests by means other than a binding opinion, and closed the file.

¶ 16            In January 2021, Warren filed the instant complaint, alleging the Department improperly denied his six FOIA requests. Warren sought (1) a declaration the Department violated FOIA and otherwise acted in bad faith by denying his FOIA requests, (2) an order

- 4 -

directing the Department to provide all requested documents, and (3) civil penalties, attorney fees, and court costs. Warren attached to his complaint the copies of his FOIA requests, the Department's responses, his requests for PAC review, the PAC's responses, and a "Physical Plant Service Work Order Log" that appeared to have been obtained from the Department.

¶ 17                    2. *Department's Motion to Dismiss*

¶ 18        In July 2021, the Department filed a combined motion to dismiss Warren's complaint under section 2-619.1 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619.1 (West 2020)).

¶ 19        The Department argued the circuit court should dismiss two claims under section 2-615 of the Procedure Code (735 ILCS 5/2-615 (West 2020)), namely (1) his request for "copies of all denial[s] of FOIA requests for 2020" (count II) and (2) the Department's administrative directive on the storage of inmate property (count I). The Department argued Warren failed to state a claim the Department improperly denied these requests because (1) the former request was overbroad, vague, and did not reasonably identify a public record and (2) the latter requested materials were exempt from disclosure as they were available to Warren in the Pinckneyville library.

¶ 20        The Department argued the circuit court should dismiss the remaining claims under section 2-619 of the Procedure Code (735 ILCS 5/2-619 (West 2020)). Specifically, the Department argued both Warren's inquiries for information on Effexor (count II) and "rules and staff protocols" governing grievances (count IV) did not reasonably identify public records. The Department further argued the requested video camera footage (count IV) and temperature monitoring records (count VI) were exempt from disclosure because the Department did not maintain such records. As to the building inspection reports (count V) and health, sanitation, and

safety reports (counts III and V), the Department argued those materials were exempt from disclosure because they were prepared for use in internal audits. Finally, the Department argued Warren's requests for copies of its denials of Warren's previous FOIA requests (counts I and III) were unduly burdensome because the Department previously provided these documents to Warren when the requests were denied.

¶ 21 In October 2021, following a hearing, the circuit court entered a written order allowing the Department's motion to dismiss for the reasons stated in the memorandum attached to the Department's motion.

¶ 22 This appeal followed.

¶ 23 II. ANALYSIS

¶ 24 On appeal, Warren argues the circuit court erroneously dismissed his complaint because it sufficiently stated a claim the Department violated FOIA in denying his requests for records. The Department argues the circuit court's dismissal was proper. We agree with the Department and affirm the circuit court's judgment.

¶ 25 A. Applicable Law

¶ 26 A motion under section 2-619.1 of the Procedure Code allows a party to "combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). On appeal, this court reviews the circuit court's dismissal of a complaint pursuant to section 2-619.1 *de novo*. *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (2009).

¶ 27 In Illinois, FOIA governs the inspection of public records. 5 ILCS 140/1.2 (West 2020) ("All records in the custody or possession of a public body are presumed to be open to

inspection or copying."). Unless subject to exemption, "[e]ach public body shall make available to any person for inspection or copying all public records." 5 ILCS 140/3(a) (West 2020). A FOIA request must "reasonably identify a public record and not general data, information or statistics." *Chicago Tribune Co. v. Department of Financial and Professional Regulation*, 2014 IL App (4th) 130427, ¶ 33. FOIA does not create an independent duty upon a public body to maintain or prepare a public record that it is not already legally required to keep, and "[t]he nonexistence of requested documents is a cognizable affirmative defense" to a FOIA claim. *Barner v. Fairburn*, 2019 IL App (3d) 180742, ¶ 12.

¶ 28        "When a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions applies." *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 408 (1997). "In the event a public body asserts that a record is exempt from such disclosure, the public body bears the burden of proving by clear and convincing evidence that the record is exempt." *Mancini Law Group, P.C. v. Schaumburg Police Department*, 2021 IL 126675 ¶ 16. "Where the public body claims that a requested document falls within one of these specifically enumerated categories and is able to prove that claim, no further inquiry by the court is necessary." *Lieber*, 176 Ill. 2d at 408.

¶ 29        FOIA provides a plethora of exemptions to a public body's duty to make certain records available for copying. See generally 5 ILCS 140/7(1)(a)-(mm) (West 2020). As relevant to the issues presented in this appeal, FOIA specifically exempts from disclosure "materials prepared or compiled with respect to internal audits of public bodies" (5 ILCS 140/7(1)(m) (West 2020)) and "records requested by persons committed to the Department of Corrections *** if those materials are available in the library of the correctional *** facility ***where the inmate is confined" (5 ILCS 140/7(1)(e-5) (West 2020)). Additionally, section 3(g) of FOIA

provides, "Requests calling for all records falling within a category shall be complied with *unless* compliance with the request would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body outweighs the public interest in the information." (Emphasis added.) 5 ILCS/140/3(g) (West 2020).

¶ 30                                 B. This Case

¶ 31        Here, Warren claims the Department failed to show each of the six denials of his FOIA requests were based on a valid exemption and therefore violated its duty to make the requested records available for copying under FOIA. We address each of Warren's claims in relation to the Department's asserted rationale for denial.

¶ 32                    1. *Records the Department Does Not Possess*

¶ 33        Warren argues the Department improperly denied his requests for "protocol[s] and policies regarding video camera footage" (count IV) and temperature monitoring records (count VI). The Department argues those materials were exempt from disclosure because the Department did not possess or maintain such records. We agree with the Department.

¶ 34                        a. Surveillance Footage Protocols

¶ 35        In its motion to dismiss, the Department argued it did not possess records responsive to the request for the policies regarding video camera footage. Attached to the motion was an affidavit from the Department's assistant legal counsel, who averred he contacted the Department's operations unit, which maintains the surveillance systems in Department facilities, to inquire about the maintenance of surveillance footage. The assistant legal counsel averred the operations unit informed him there was no Department procedure for the maintenance of surveillance footage and the Department did not possess any records responsive to Warren's request.

¶ 36 Warren nonetheless asserts the Department does, in fact, possess responsive records and failed to conduct an adequate search, as evidenced by (1) "20-IL-AD 5.1-104" of the Illinois Administrative Code and (2) a document from the Department listing "Staff Operating Procedures/Policies" as a category of records the Department shall immediately disclose upon request under section 3.5(a) of FOIA (see 5 ILCS 140/3.5(a) (West 2020)). Although there is no such provision in the Administrative Code, the Department suggests Warren may be referring to administrative directive No. 05.01.104 (eff. Apr. 1, 2021), which relates to the Department's intent to "maintain systems for strict accountability of all cameras, digital media and related equipment to ensure that such materials are only issued to or accessed by authorized personnel, and that all cameras and related equipment are properly and securely stored when not in use."

¶ 37 While we agree with Warren the administrative directive may have been responsive to his FOIA request, we nonetheless find the Department did not violate FOIA because it has demonstrated the administrative directive was exempt from disclosure under section 7(1)(e-5). 5 ILCS 140/7(1)(e-5) (West 2020) (exempting "records requested by persons committed to the Department of Corrections *** if those materials are available in the library of the correctional *** facility *** where the inmate is confined"). To the extent Warren refers to the administrative directive, the Department submits it is available to Warren in the Pinckneyville library.

¶ 38 Furthermore, the second document Warren relies upon does not refer to policies or protocols for video surveillance footage at all; the fact the Department has a general duty to disclose "Staff Operating Procedures/Policies" under section 3.5(a) of FOIA does not prove the existence of protocols relating to video surveillance. Accordingly, the circuit court did not err in dismissing this claim.

¶ 39                          b. Temperature Monitoring Records

¶ 40          The Department's assistant legal counsel also averred, in his affidavit attached to

the motion to dismiss, he had consulted with Lawrence's chief engineer and found no records

responsive to Warren's request for "temperature monitoring records" for various Lawrence

housing units over several periods in 2019. Warren argues the Department's assertion is

inaccurate because the Department possesses "thermometers that monitor temperatures."

¶ 41          Here, the Department provided clear and convincing evidence it did not possess

the records sought by Warren. The fact the Department's facilities contain thermometers does

not contradict the assistant legal counsel's affidavit stating the Department does not aggregate

data regarding temperature readings from those thermometers. As stated above, FOIA does not

create an independent duty upon a public body to maintain or prepare a public record that it is

not already legally required to keep, and "[t]he nonexistence of requested documents is a

cognizable affirmative defense." *Barner v. Fairburn*, 2019 IL App (3d) 180742, ¶ 12. Because

the Department demonstrated it does not possess these records, the circuit court properly

dismissed this claim.

¶ 42                       2. *Request Not Identifying a Public Record*

¶ 43          Next, Warren argues the Department improperly denied his requests for

(1) information on the Department's Effexor ban and the drug's effects (count II), (2) "copies of

all denial[s] of FOI[A] requests for 2020" (count II), and (3) staff protocols regarding the

investigation of grievances (count IV). The Department asserts Warren's requests did not

reasonably identify a public record and therefore were properly denied. We agree with the

Department.

¶ 44　　　　　As stated above, a FOIA request must "reasonably identify a public record and not general data, information or statistics." *Chicago Tribune Co.*, 2014 IL App (4th) 130427, ¶ 33. Furthermore, FOIA "does not compel the agency to provide answers to questions posed by the inquirer." *Kenyon v. Garrels*, 184 Ill. App. 3d 28, 32 (1989).

¶ 45　　　　　Here, the Department properly denied Warren's request for information regarding the Department's ban of the drug Effexor because he did not reasonably identify any public record. In his request, Warren asked for "information of why psyc[h]otropic med[ication] Effexor was banned from [the Department] and its short term and long term side effects." This was clearly a request for data or general information not contemplated by FOIA, the focus of which is "access to *records or documents*." Warren counters that he did, in fact, identify a public record, because in order for the Department to "notify all mental health professionals *** that they are no longer able to provide/pr[e]scribe 'Effexor' to mental health patients," it would have sent "a memorandum email" containing "the order, and reasoning for it." Even assuming such a memorandum email exists, Warren's original request referenced no such record or document. Warren cannot now complain on appeal that the Department failed to produce a record he never requested. Because the Department is not required to respond to general data requests, the circuit court properly dismissed this claim.

¶ 46　　　　　Similarly, the Department properly denied Warren's request for rules and staff protocols governing grievances. In his request, Warren sought "what rules and staff protocol[s] of grievances and grievance officer routine[s] regarding investigation of their complaint of grievances." Once again, Warren's request sought general information regarding grievances without identifying any public record or document. Warren counters "a reasonable person could have identified what records were being sought" and the Department therefore acted in bad faith

for not producing them. We disagree. Warren's request clearly contemplated a compilation of information, a task which FOIA does not impose on public bodies, and the Department's refusal to prepare a compilation it is not required to make does not constitute an act of bad faith. See *Kenyon*, 184 Ill App. 3d at 32. Accordingly, the circuit court properly dismissed this claim.

¶ 47 Finally, the Department also properly denied Warren's request for "copies of all denial of FOIA requests for 2020." Warren's request did not specify whether he sought information regarding every FOIA request denial issued by the Department for all requestors or only those pertaining to his own previous FOIA requests. In response, the Department specifically asked Warren to clarify and narrow the scope of the records he sought pursuant to this request, but Warren did not reply to the Department's letter. (We note Warren later requested all of the denials of his own FOIA requests from 2020 (count III), which the Department denied on the basis it would be unduly burdensome to produce. We discuss the denial of that request below.) We conclude the circuit court properly dismissed this claim because it did not reasonably identify which FOIA denials Warren sought.

¶ 48 3. *Records for Internal Audit*

¶ 49 Warren next argues the Department failed to show it was statutorily exempt from disclosing the requested building inspection reports (count V) and health, sanitation, and safety reports (counts III and V). The Department argues it presented clear and convincing evidence it was exempt from disclosing these documents because they were prepared for internal auditing purposes. We agree with the Department.

¶ 50 As stated above, section 7(1)(m) of FOIA specifically exempts from disclosure "materials prepared or compiled with respect to internal audits of public bodies." 5 ILCS 140/7(1)(m) (West 2020). Although FOIA does not define "internal audit," Black's Law

Dictionary (11th ed. 2019) defines an audit as "[a] formal examination of an *** organization's accounting records, financial situation, or compliance with some other set of standards," and an internal audit as being "performed by an organization's personnel to ensure that internal procedures, operations, and accounting practices are in proper order."

¶ 51 Here, the Department provided clear and convincing evidence the reports requested by Warren were exempt. In its motion to dismiss, the Department asserted the requested health, safety, sanitation, and building inspection reports were exempt from disclosure because they were prepared for Department internal auditing purposes. In his affidavit, the Department's assistant legal counsel averred the Department "does not have any reports entitled 'building inspection reports.' " He further averred that while the Department's "Building Safety and Sanitation Inspection Reports were likely responsive" to Warren's requests, "they were materials prepared or compiled for internal audits" and were therefore exempt from disclosure. Specifically, he averred those reports "summarize [the Department's] methodical reviews of compliance with certain sets of standards established by [the Department]. The reports document whether standards were met in each particular area and what corrective actions were recommended." This affidavit shows the requested records were prepared for the purpose of determining whether the Department had complied with its own standards of building safety and sanitation, and therefore we find they qualify as records prepared for "internal audits of public bodies." 5 ILCS 140/7(1)(m) (West 2020).

¶ 52 Warren, relying on *Uptown People's Law Center v. Department of Corrections*, 2014 IL App (1st) 130161, contends the exemption is inapplicable because the Department disclosed a similar category of records in that case. Warren's reliance is misplaced. In *Uptown*, the plaintiff nonprofit organization filed a complaint against the Department, asserting the

Department failed to respond to its requests, on three separate dates, for "records relating to prison conditions, facility maintenance and sanitation reports." *Uptown*, 2014 IL App (1st) 130161, ¶ 3. Following the filing of the organization's complaint, the Department tendered all of the requested materials. We acknowledge the requested records in *Uptown*, as described by the court in that case, appear to be similar in nature to those requested by Warren here. However, the *Uptown* court at no point opined on whether the records were exempt from disclosure under section 7(1)(m) because the Department never asserted such an exemption. The mere fact it voluntarily disclosed records of a similar nature in that case has no bearing on whether the exemption is applicable here. The court did not state the exact wording of the request in that case, and because the documents were voluntarily disclosed, the Department presumably concluded it possessed responsive, nonexempt records to the organization's request. Accordingly, we disagree with Warren's assertion the exemption did not apply here and find the court's dismissal of these claims was proper.

¶ 53                          4. *Records Available at Pinckneyville*

¶ 54        The Department asserts it was statutorily exempt from disclosing the administrative directive on the storage of inmate property (count I) because it was available to Warren in the Pinckneyville library, and Warren nonetheless forfeited any claim to the contrary by failing to raise it in the circuit court or in this court on appeal. The Department correctly notes Warren does not raise this issue in his opening brief on appeal and appears to have abandoned it. "Issues not raised in either the trial court or the appellate court are forfeited." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. Warren does not dispute the Department's assertion of forfeiture, and we therefore decline to address this issue.

¶ 55                          5. *Unduly Burdensome Requests*

¶ 56        Lastly, Warren argues the Department improperly denied his requests for copies of the denials of his previous FOIA requests (counts I, II, and III). The Department asserts these requests were unduly burdensome to produce because it had already sent him these documents. We agree with the Department.

¶ 57        As stated above, "[r]equests calling for all records falling within a category shall be complied with *unless* compliance with the request would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body outweighs the public interest in the information." (Emphasis added.) 5 ILCS 140/3(g) (West 2020). This section of FOIA specifically provides that "[r]epeated requests from the same person for the same records that are unchanged or identical to records previously provided or properly denied under this Act shall be deemed unduly burdensome under this provision." 5 ILCS 140/3(g) (West 2020).

¶ 58        Here, the Department properly declined to resend its denials of Warren's previous FOIA requests because, pursuant to section 3(g) of FOIA, they were "unchanged or identical to records previously provided" under FOIA. The Department asserts it provided Warren the denials of his previous FOIA requests in response to the underlying requests. Warren argues the "repeated requests" exemption should not apply because although the denial letters were provided to him as a response to a request for records, he did not make repeated *requests* for the denial letters. Essentially, Warren argues the "repeated requests" exemption applies only when the individual has previously *requested* the same record. Our reading of the statute does not support such an application. Although the statutory language refers to "repeated" requests from the same person, we agree with the Department that this phrase "simply reflects that, generally, records that have been previously provided (and thus need not be re-disclosed) will have been

- 15 -

obtained via a FOIA request for those records, rather than, as here, sent in the course of FOIA proceedings." Even assuming *arguendo* Warren's reading of the statute is correct, the Department nonetheless properly denied Warren's requests under section 3(g)'s general exemption for unduly burdensome requests because the Department did, in fact, already provide the documents to Warren—a fact Warren does not dispute. Accordingly, we conclude the circuit court properly denied Warren's claim regarding the denial of his requests for his previous FOIA denial letters.

¶ 59    Because Warren has failed to show the Department violated FOIA when it denied his aforementioned requests for records, the circuit court properly allowed the Department's motion to dismiss, and we affirm.

¶ 60                                III. CONCLUSION

¶ 61    For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021) we affirm the trial court's judgment.

¶ 62    Affirmed.