# Illinois Official Reports

## Appellate Court

---

**Donovan v. Community Unit School District 303**, 2015 IL App (2d) 140704

---

| | |
|---|---|
| Appellate Court Caption | JIM DONOVAN and STEVEN SCHULZE, Individually and in Representative Capacity of All Those Similarly Situated, Plaintiffs-Appellants, v. COMMUNITY UNIT SCHOOL DISTRICT 303, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-0704 |
| Filed | July 16, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 13-L-510; the Hon. James R. Murphy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Timothy P. Dwyer, of Law Offices of Timothy P. Dwyer, of St. Charles, for appellants.<br><br>Stanley B. Eisenhammer and Jennifer A. Mueller, both of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, LLP, of Arlington Heights, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs, Jim Donovan and Steven Schulze, individually and representing all those similarly situated, appeal the trial court's dismissal of their class action complaint against defendant, Community Unit School District 303. On appeal, plaintiffs argue that the trial court erred by dismissing their complaint because: (1) their complaint is not barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2010)); and (2) their complaint sufficiently alleged an implied private cause of action. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    This case involves the reorganization of two schools, Davis Elementary and Richmond Elementary, that, prior to the 2011-12 school year, both served students in kindergarten through fifth grade. Plaintiffs are parents of students who originally attended Davis. Defendant is a school district organized under the Illinois School Code (105 ILCS 5/1-1 *et seq.* (West 2010)). Beginning in the 2011-12 school year, defendant reconfigured the two schools so that Davis served students in kindergarten through second grade and Richmond served students in third grade through fifth grade (2011 Plan).

¶ 4    The No Child Left Behind Act of 2001 (NCLB) (20 U.S.C. § 6301 *et seq.* (Supp. I 2001)) required states to establish and enforce learning standards and to achieve adequate yearly progress (AYP) toward those standards, as measured by federally approved standardized tests. See 20 U.S.C. § 6311 (Supp. II 2002). To comply with the NCLB, the Illinois General Assembly amended sections of, and added sections to, the School Code (105 ILCS 5/1-1 *et seq.* (West 2010)). Most notably, Public Act 93-470, § 5 (eff. Aug. 8, 2003), significantly amended section 2-3.25d of the School Code (105 ILCS 5/2-3.25d (West 2010)). Section 2-3.25d(a) provides that a school that fails to make AYP for two consecutive years is placed on "academic early warning status for the next school year." 105 ILCS 5/2-3.25d(a) (West 2010).

¶ 5    For four consecutive school years, 2007-08 through 2010-11, Richmond failed to achieve AYP. Once Richmond failed to make AYP for the second consecutive school year, 2008-09, defendant developed a School Improvement Plan (SIP) for Richmond in 2009-10. Defendant was required to notify the parents of Richmond students of the AYP issue and to offer those parents the option to enroll their children in higher-performing schools within the district (this option is known as "choice"). By the following school year, 2010-11, 117 Richmond students had transferred to other schools in the district, and the enrollment at Davis had increased by 19 students. Davis had achieved AYP every school year prior to 2010-11.

¶ 6    The 2011 Plan reconfigured Richmond and Davis from two independent elementary schools, each serving students in kindergarten through fifth grade, into interdependent elementary schools, with Davis serving students in kindergarten through second grade and Richmond serving students in third grade through fifth grade. After the fall of 2011, the parents of Richmond students could no longer transfer their children to higher-performing schools, because choice was no longer available.

¶ 7    In *Clarke v. Community Unit School District 303*, 2012 IL App (2d) 110705, ¶¶ 25, 41 (*Clarke I*), the plaintiffs brought suit attacking the 2011 Plan. We held that the plaintiffs' complaint contained sufficient allegations for a writ of *mandamus*, based on violations of the

School Code and its regulations, and we remanded the matter to the trial court. On remand, the trial court determined that defendant had the discretion to combine the two schools and, therefore, the court left that part of the 2011 Plan intact. However, the trial court issued a writ of *mandamus* ordering defendant to " 'develop a revised Corrective Action Plan that includes Choice *** in accordance with the mandates in the NCLB, the School Code[, and its regulations].' " *Clarke v. Community Unit School District 303*, 2014 IL App (2d) 131016, ¶ 15 (*Clarke II*). On appeal, this court affirmed the trial court's decision to leave the reconfiguration of the schools intact but vacated the writ of *mandamus*, reasoning that defendant had obtained a waiver in 2014 from the United States Department of Education. *Id.* ¶¶ 40, 46.

¶ 8 In this case, plaintiffs filed their complaint on October 10, 2013, after we decided *Clarke I*, after the trial court decided the case on remand, and before we decided *Clarke II*. Plaintiffs alleged the following. On March 17, 2011, defendant adopted the 2011 Plan that combined Davis and Richmond and failed to give the parents of the children forced to attend Richmond a "choice" to transfer them to another school, "in contravention of the law." Under the NCLB, any school that failed to achieve AYP for two consecutive years was required to allow its students' parents to transfer them to a school that had achieved AYP. In the fall of 2011, Richmond had failed to achieve AYP for three consecutive years. Plaintiffs had children within the Davis school boundary when defendant's 2011 Plan forced their children to attend Richmond, a lower-achieving school. Some parents, including Donovan and Schulze, removed their children from the public school system and placed them in private schools, at a cost in excess of $50,000. Other parents moved outside the school boundary to "evade the illegal" 2011 Plan. Some parents did not have the option to move or to place their children in private schools, and they were forced to have their children attend Richmond. Plaintiffs sought findings that defendant "knowingly and wholly violated the NCLB[ ] [and] the Illinois School Code [and] that the aforementioned violation remain[ed] the direct and proximate cause of the Plaintiffs' damages." Plaintiffs also sought: (1) certification of a conditional class; (2) an award of compensatory damages against defendant for plaintiffs and all members of the class; (3) attorney fees and costs; and (4) further relief that the court deemed just and equitable.

¶ 9 On November 8, 2013, defendant filed a notice of removal to federal court. The federal court issued an order remanding the case to the trial court.

¶ 10 On January 17, 2014, defendant filed a motion to dismiss pursuant to sections 2-615, 2-619(a)(9), and 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(9), 2-619.1 (West 2010)). Defendant argued that plaintiffs' complaint failed to state a cause of action and should be dismissed pursuant to section 2-615 of the Code because plaintiffs did not have a private cause of action for damages under the School Code. Further, Illinois does not recognize the tort of educational malpractice. Defendant argued that plaintiffs' complaint should be dismissed pursuant to section 2-619(a)(9) of the Code because defendant was entitled to immunity under the Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2010)). More specifically, in its memorandum of law attached to its motion, defendant argued that section 2-103 of the Tort Immunity Act (745 ILCS 10/2-103 (West 2010)) afforded defendant immunity. Plaintiffs filed a response to defendant's motion to dismiss and defendant filed a reply.

¶ 11 On February 26, 2014, after hearing argument by counsel, the trial court granted defendant's section 2-619 motion to dismiss, stating in its written order that plaintiffs' complaint was barred by section 2-103 of the Tort Immunity Act. The trial court also granted

defendant's section 2-615 motion to dismiss, stating that the School Code and its regulations do not "give rise to an implied [private cause] of action for damages." Plaintiffs' complaint did not "meet the [three] characteristics necessary to allow a court to imply an appropriate cause of action for damages."

¶ 12    On March 24, 2014, plaintiffs filed a motion for reconsideration. On June 4, 2014, the trial court denied plaintiffs' motion. Plaintiffs filed their notice of appeal on June 25, 2014.

¶ 13                                    II. ANALYSIS

¶ 14    Plaintiffs argue that the trial court erred by granting defendant's motion to dismiss. Plaintiffs' complaint was dismissed pursuant to a combined motion brought under section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2010). This section permits section 2-615 and section 2-619 motions to be filed together as a single motion, but the combined motion is divided into parts that are limited to and specify the single section of the Code under which relief is sought. *Id.* Under either section 2-615 or section 2-619, our review is *de novo*. *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶ 64.

¶ 15    A motion to dismiss pursuant to section 2-619(a)(9) of the Code admits the legal sufficiency of the complaint but asserts that the plaintiff's claim "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010); *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 4. " '[A]ffirmative matter,' in a section 2-619(a)(9) motion, is something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994). If the grounds giving rise to a section 2-619(a)(9) motion do not appear on the face of the complaint, the motion must be supported by an affidavit. 735 ILCS 5/2-619(a) (West 2010). The existence and preclusive effect of tort immunity are properly raised in a section 2-619(a)(9) motion. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008).

¶ 16    Plaintiffs argue that the trial court erred by determining that their claims are barred by section 2-103 of the Tort Immunity Act, because the alleged conduct at issue is ministerial and not discretionary. Defendant argues that the immunity provided by section 2-103 is not subject to an exception for ministerial acts.

¶ 17    The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). By providing immunity, the legislature sought to prevent public funds from being diverted from their intended purpose to the payment of damages claims. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001). The immunities afforded under the Tort Immunity Act serve as affirmative defenses, which, if properly raised and proven, bar a plaintiff's right to recovery. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 43-44 (1998).

¶ 18    The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Brunton v. Kruger*, 2015 IL 117663, ¶ 24. The best indication of the legislature's intent is the language of the statute, which must be afforded its plain and ordinary meaning. *Id.* When the language is unambiguous, the statute must be applied as written without resort to other aids of construction. *Id.*

¶ 19        Section 2-103 of the Tort Immunity Act provides:

> "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103 (West 2010).

¶ 20        In this case plaintiffs alleged injuries caused by defendant's adoption of the 2011 Plan and its failure to provide choice, in contravention of the School Code and the NCLB. Plaintiffs contend that section 2-103 "does not pertain to this case at all because the action alleged of the Defendant District is ministerial and not discretionary." However, plaintiffs' interpretation is not supported by the plain language of section 2-103. Nothing in the language of section 2-103 provides a distinction between ministerial and discretionary acts or an exception for ministerial acts. We will not depart from the plain language of a statute by including conditions, limitations, or exceptions that are not expressed by the legislature. See *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 493 (2001). Because nothing in the plain language of section 2-103 contains an exception for acts that are ministerial, "we will not insert one." *Id.* at 493-94. Further, a review of the Tort Immunity Act reveals that, when the legislature intended to limit immunity to discretionary acts, it expressed its intention with specific language. For example, section 2-201 of the Tort Immunity Act provides:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the *exercise of discretion* is not liable for an injury resulting from his act or omission in determining policy when acting in the *exercise of such discretion* even though abused." (Emphases added.) 745 ILCS 10/2-201 (West 2010).

The absence in section 2-103 of language limiting immunity to *discretionary* acts or omissions, where such language is included in another section of the Tort Immunity Act, demonstrates the legislature's intention to exclude the limitation. See *Jost v. Bailey*, 286 Ill. App. 3d 872, 878 (1997). In addition, immunities provided pursuant to the Tort Immunity Act are absolute unless expressly limited by the legislature. *Id.* at 878-79. Accordingly, the trial court properly determined that section 2-103 of the Tort Immunity Act barred plaintiffs' claims. Therefore, the trial court properly granted defendant's section 2-619(a)(9) motion to dismiss.

¶ 21        Plaintiffs assert that "a local unit of government cannot obtain immunity under the Tort Immunity Act for actions which are ministerial" and that "only discretionary acts will provide immunity for governmental entities." Plaintiffs cite *Van Meter*, 207 Ill. 2d 359, *Trotter v. School District 218*, 315 Ill. App. 3d 1 (2000), and *Johnson v. Mers*, 279 Ill. App. 3d 372 (1996), to support these assertions. The municipal defendants in those cases did not assert immunity pursuant to the section at issue here; rather, the defendants asserted immunity pursuant to section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2010)), which requires a municipal defendant to establish that its alleged actions or omissions were discretionary. See *id.*; *Van Meter*, 207 Ill. 2d at 380; *Trotter*, 315 Ill. App. 3d at 12-13; *Johnson*, 279 Ill. App. 3d at 380. Defendant in this case asserted immunity pursuant to section 2-103, which does not require a defendant to establish that its alleged acts or omissions were discretionary. See 745 ILCS 10/2-103 (West 2010). Therefore, *Van Meter*, *Trotter*, and *Johnson* are distinguishable from the case at bar.

¶ 22        Plaintiffs also contend that "[e]very single reported case under section 2-103 of the Tort Immunity Act where the government prevail[ed] involves an exercise of discretion by the local unit of government." Plaintiffs cite *Pouk v. Village of Romeoville*, 405 Ill. App. 3d 194 (2010),

and *Jost*, 286 Ill. App. 3d 872, to support this argument. Neither case holds that the defendants were immune under the Tort Immunity Act because they exercised discretion.

¶ 23 In *Pouk*, the plaintiff alleged that the municipal defendant willfully and wantonly failed to enforce an intersection-visibility ordinance, causing the death of the plaintiff's daughter. *Pouk*, 405 Ill. App. 3d at 195, 198. The municipal defendant asserted immunity pursuant to sections 2-103 and 2-105 of the Tort Immunity Act, which do not contain an exception for willful and wanton conduct. *Id*. at 198. The plaintiff contended that section 2-202 of the Tort Immunity Act, which provided an exception for willful and wanton conduct, applied. *Id*. at 196. The appellate court held that the plaintiff's allegations "[fell] squarely within sections 2-103 and 2-105." *Id*. at 198. The court held that therefore section 2-202 did not apply and the plaintiff's complaint was properly dismissed. *Id*. Thus, *Pouk* is inapplicable to this case.

¶ 24 In *Jost*, the plaintiffs alleged that the defendants were negligent and willful and wanton in their approval of a dangerous snowmobile trail that caused the death of their daughter, who was struck by a motor vehicle. *Jost*, 286 Ill. App. 3d at 874. The defendants asserted immunity pursuant to the Snowmobile Registration and Safety Act (625 ILCS 40/5-1(N) (West 1994)) and section 3-109 of the Tort Immunity Act (745 ILCS 10/3-109 (West 1994)). *Jost*, 286 Ill. App. 3d at 874. This court held that section 5-1(N) of the Snowmobile Registration and Safety Act barred the plaintiffs' complaint and that, even if it did not, section 2-103 of the Tort Immunity Act would bar the plaintiff's complaint. *Id*. at 879. Because *Jost* does not discuss whether the defendants' acts were allegedly discretionary or ministerial, *Jost* is inapplicable to this case.

¶ 25 Plaintiffs correctly note that, in dismissing their complaint under section 2-103 of the Tort Immunity Act, the trial court stated in its written order, "The conduct complained of is discretionary." Assuming that the trial court intended to make a meaningful distinction between discretionary and ministerial acts, we would not be bound by this misstatement. We review *de novo* both the grant of a motion to dismiss and the interpretation of a statute. See *Mauvais-Jarvis*, 2013 IL App (1st) 120070, ¶ 64; *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 13. In addition, we may affirm the trial court's judgment on any basis supported by the record. See *In re Marriage of Edelman*, 2015 IL App (2d) 140847, ¶ 36.

¶ 26 Because we determine that the trial court properly granted defendant's section 2-619(a)(9) motion to dismiss, based on section 2-103 of the Tort Immunity Act, we need not address the remaining issues raised by plaintiffs.

¶ 27 III. CONCLUSION

¶ 28 For the reasons stated, we affirm the trial court's order granting defendant's motion to dismiss plaintiffs' complaint.

¶ 29 Affirmed.