# Illinois Official Reports

## Appellate Court

*Hites v. Waubonsee Community College*, 2016 IL App (2d) 150836

| | |
|---|---|
| Appellate Court Caption | DANIEL HITES, Plaintiff-Appellant, v. WAUBONSEE COMMUNITY COLLEGE, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-15-0836 |
| Filed<br>Modified upon<br>denial of rehearing | June 6, 2016<br><br>July 13, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 14-CH-398; the Hon. David R. Akemann, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Reid P. Huefner, of Kirkland & Ellis LLP, of Chicago, for appellant.<br><br>Paulette A. Petretti and Anthony G. Scariano, both of Scariano, Himes & Petrarca, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Daniel Hites, requested data from defendant, Waubonsee Community College (WCC), pursuant to the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2014)). The data he sought were "raw inputs" for fields on WCC's student registration forms, as well as zip codes of students in specified classes and the total numbers of students in specified classes. WCC responded that it did not have documents responsive to his requests.

¶ 2    Plaintiff sought recourse in the circuit court, and WCC moved to dismiss his complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)). After an evidentiary hearing, the circuit court dismissed plaintiff's complaint because his requests were not for public records under FOIA.

¶ 3    On appeal, plaintiff argues that his requests were for public records under FOIA. For the reasons contained herein, we affirm in part and reverse in part, because 7 of plaintiff's 13 requests were for public records under FOIA.

¶ 4                                    I. BACKGROUND
¶ 5                          A. Plaintiff's Complaint and FOIA Requests
¶ 6    Plaintiff filed his complaint against WCC on March 18, 2014. He sought (1) an order for WCC to produce the nonexempt public records he requested, (2) a declaration that WCC willfully and intentionally failed to comply with FOIA and a civil penalty for each violation, and (3) an award of attorney fees and costs.

¶ 7    Plaintiff made his first FOIA requests on January 6, 2011. WCC provided documents responsive to some but not all of plaintiff's requests. Plaintiff made additional FOIA requests on February 14, 2013. This second set of requests formed the basis for the current litigation. Plaintiff requested:

> (1) The zip codes of all people taking the National Safety Council's Defensive Driving Course (DDS-4) in 2011.

> (2) The zip codes of all people taking GED classes in the fall of 2011 at the Aurora campus.

> (3) The zip codes of all people taking English as a second language (ESL) classes in the fall of 2011 at the Aurora campus.

> (4) The total number of registered students without social security numbers in the fall of 2011 at the Aurora campus.

> (5) The raw input for the "city" field on the student registration forms for all students registered in the fall of 2011 at the Aurora campus.

> (6) The raw input for the "county code" field on the student registration forms for all students registered in the fall of 2011 at the Aurora campus.

> (7) The raw input for the "U.S. Citizen" field on the student registration form for all students registered at the Aurora campus in the fall of 2011.

> (8) The raw input for the "Are you in the United States on a visa—nonresident Alien" field on the student registration forms for all students registered in the fall of 2011 at the Aurora campus.

(9) The total number of registered students by year from 1995 to 2008 at the Aurora campus.

(10) The total number of registered students by year from 1995 to 2008 taking ESL classes at the Aurora campus.

(11) The total number of registered students by year from 1995 to 2008 taking Adult Basic Education (ABE)/GED classes at the Aurora campus.

(12) The total number of registered students from 1995 to the present taking classes at Beaupre Elementary School, Family Focus, Hermes Elementary School, Rollins Elementary School, St. Mark's Lutheran Church, and Westminster Presbyterian Church (as shown on page AS of the fall 2009 workforce development noncredit course schedule).

(13) The total number of out-of-district students in the fall of 2011 at the Aurora campus.

(14) A copy of the charter for WCC.

(15) The mailing addresses of WCC trustees.

¶ 8 WCC responded to plaintiff's requests on February 21, 2013. It provided the same response to requests (1) through (13): "The college does not aggregate this information as there is no purpose for the college to do so. Therefore, there is no responsive document to your request."

¶ 9 In an August 2, 2013, letter, plaintiff replied to WCC's response. Plaintiff maintained that the requested information should be provided. In the event that WCC was unwilling to reconsider its position, plaintiff alternatively requested that WCC provide a complete copy of its databases housing the requested information. WCC responded on August 8 that it would not change its position or alternatively provide a complete copy of its databases. Plaintiff and WCC exchanged more letters in which plaintiff asserted that WCC needed to provide the requested information and WCC claimed that it was not required to do so.

¶ 10 On September 3, 2013, plaintiff requested that WCC furnish a description of how the requested information could be obtained. On September 11, WCC responded that it was not required by FOIA to answer questions. Rather, FOIA allowed only access to public records.

¶ 11 On October 11, 2013, plaintiff proposed a "final attempt at compromise" via letter, with which he included an Adobe-based script that could automate the redaction process, in an effort to minimize WCC's alleged burden. The letter described the script's functioning and use. WCC responded that it could not use the Adobe-based script but that, even if it could, the script would not diminish the burden of retrieving the requested information. It therefore declined to provide the information.

¶ 12                          B. Motion to Dismiss

¶ 13 On May 2, 2014, WCC filed a motion to dismiss plaintiff's complaint under section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)). WCC moved to dismiss for lack of jurisdiction (735 ILCS 5/2-619(a)(1) (West 2014)) or, alternatively, because the complaint was barred by an affirmative matter (735 ILCS 5/2-619(a)(9) (West 2014)). The affirmative matter was that FOIA did not require WCC to create new records to respond to plaintiff's requests. WCC argued that plaintiff improperly requested it to provide general data and aggregate statistics and did not reasonably identify a public record. To wit, WCC argued that "the gravamen of

plaintiff's Complaint is that the College will not compile data and information for him," but FOIA was not designed to compel such compilation of data. WCC further argued that compliance with plaintiff's requests would be significantly burdensome, that it had properly invoked *per se* exemptions under FOIA, and that plaintiff's complaint should be barred by *laches*.

¶ 14    On September 17, 2014, the court set an evidentiary hearing to address WCC's burden in complying with plaintiff's requests and to determine the availability of alternative methods of providing plaintiff the information he sought.

¶ 15                                C. Evidentiary Hearing

¶ 16    The court held an evidentiary hearing over the course of three days—March 4, 6, and 12, 2015—and we summarize the relevant testimony. Terrence Felton, WCC's chief information officer (CIO), testified as to WCC's databases as follows. WCC had two databases with information responsive to plaintiff's FOIA requests: the Banner database (Banner), which housed GED files, and the Driver Safety database. Banner was a relational database made by Oracle, and WCC used it to handle "every major function" at WCC, including finance, financial aid, student records, and inventory. Banner tracked all sorts of student information, including a student's name, address, and zip code, and what courses a student took and when he or she took them. It also stored the county in which a student lived, whether a student was a United States citizen, and whether a student lived within the school district. Information in Banner flowed two ways: an authorized user could look up information such as a student's name or zip code and could also enter a student's name or zip code into the system. WCC employed two IT employees who could extract information from WCC's database by writing a program to do so. For example, it was possible to search Banner for the name and zip code of all students taking an ESL class in 2011. Felton continued, "[y]ou could write a program to do pretty much anything you want." It "would take a while," but it was possible to write a program to extract from Banner everything that plaintiff sought in his FOIA requests.

¶ 17    The Driver Safety database was also a relational database. WCC could search it and extract information from it just as it could with Banner. The Driver Safety database tracked students' names, zip codes, and classes taken.

¶ 18    Alexander Deligtisch, a director in information management services with AlixPartners, was accepted by the circuit court as a data analytics expert, and he testified as follows. He worked in litigation analytics, which included work with attorneys on behalf of their clients with databases, for purposes of commercial litigation. He had spent 19 years working with data analytics. He worked with databases, both relational and nonrelational, on a daily basis, and he often worked to extract responsive data without also extracting personally identifying information.

¶ 19    He identified both Banner and the Driver Safety database as relational databases, which were systems that stored data in a grid format. Relational databases were common and widely used by businesses. Relational databases were like Excel spreadsheets, with data organized in columns and rows, forming tables. Each database would usually contain many tables. Searches across multiple tables were not only possible but were the purpose of a relational database. For instance, the relational database allowed for a search of the zip codes of all students taking a particular class. In order to perform such a search for zip codes, one would have to write code to perform the search, but this did not constitute writing a program. Rather, the query would

essentially say, " 'Go to this table, look at these columns, pull out this data and put it in a spreadsheet or a grid for me.' " Writing the necessary query would take less than one minute.

¶ 20 Deligtisch thus believed that it was possible to respond to plaintiff's request for, for example, the zip codes of all students taking the DDS-4 in 2011. It would require the user to identify the tables or the field names that contained the data. Then, the user would enter a short language command, around 10 to 20 words, and the database would provide the information in a grid that looked like an Excel spreadsheet. Relational databases allowed the user to quickly extract the data and put it in an Excel format. He analogized running a search query on a relational database to going to a filing cabinet and pulling out certain responsive files.

¶ 21                                     D. Circuit Court Ruling

¶ 22 On July 22, 2015, the circuit court issued its findings and order on WCC's section 2-619 motion to dismiss. It addressed only plaintiff's February 14, 2013, FOIA requests, because it determined that plaintiff's complaint did not seek relief related to his January 6, 2011, FOIA requests.

¶ 23 The circuit court began its analysis by examining *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, which it found instructive. There, the plaintiff sought various information from the Department of Financial and Professional Regulation (Department), including the number of license holders who had ever been identified as sex offenders; the number of medical professionals who were identified as sex offenders; the numbers, respectively, of initial claims, complaints, and formal complaints received against these sex offenders; and the dates of these claims, complaints, and formal complaints, and how and when they were resolved. *Id.* ¶¶ 5-6. The parties filed cross-motions for summary judgment, with the Department arguing, in part, that it did not keep the types of records requested and that FOIA did not require it to create such records. *Id.* ¶¶ 1, 14. The circuit court denied the Department's motion for summary judgment and granted summary judgment in favor of the plaintiff. *Id.* ¶ 16. The appellate court reversed, reasoning that the plaintiff had not requested "public records" as defined by FOIA. *Id.* ¶ 32. Rather, the plaintiff's request was more akin to an interrogatory in a civil action than a FOIA request for records. *Id.* A proper FOIA request had to identify a public record, not general data, information, or statistics. *Id.* ¶ 33. Accordingly, the Department did not need to answer the plaintiff's " 'general inquiry question' " concerning the number of initial claims, because doing so would require creating a new record. *Id.* ¶ 36.

¶ 24 The circuit court here then turned to plaintiff's FOIA requests. It reasoned that plaintiff, like the plaintiff in *Chicago Tribune*, was requesting that WCC provide tallies of data instead of existing public records. Specifically, the circuit court identified five of plaintiff's requests: (4) the total number of registered students at the Aurora campus without social security numbers in the fall of 2011; (9) the total number of registered students by year at the Aurora campus from 1995 to 2008; (10) the total number of registered students taking ESL classes at the Aurora campus from 1995 to 2008; (11) the total number of registered students taking ABE/GED classes at the Aurora campus from 1995 to 2008; and (12) the total number of registered students from 1995 to the present taking classes at other locations, including Beupre Elementary School and Hermes Elementary School. Seeking such numerical tallies did not constitute requests for public records under FOIA. "Simply put, if [WCC] already aggregated such data and statistics, then any resulting documents aggregating said information would be

subject to FOIA." But, in the absence of such data aggregation, FOIA did not compel WCC to compile data or answer plaintiff's questions. Therefore, the circuit court dismissed the five aforementioned FOIA requests.

¶ 25 The circuit court next addressed plaintiff's request that WCC conduct database queries responsive to his specific requests. It disagreed with plaintiff's argument that each data point—for example, the zip codes of individual students—constituted a public record. While it recognized that records maintained in an electronic format are subject to the FOIA disclosure rules, plaintiff sought to expand the definition of public records to include every unique data point in a database. Plaintiff relied on *Kalven v. City of Chicago*, 2014 IL App (1st) 121846, to support that each piece of data in WCC's databases was a public record, but the circuit court disagreed that *Kalven* supported plaintiff's assertion. The salient distinction, the court stated, was that the documents sought in *Kalven* had already been prepared and maintained, whereas WCC did not prepare and maintain documents with the aggregate data that plaintiff sought.

¶ 26 Nor was the circuit court persuaded by plaintiff's citation to *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390 (2006). The circuit court explained that the court in *Southern Illinoisan* did not order the defendants to query their database in response to the plaintiff's FOIA request. Rather, it ordered the defendants to produce portions of their cancer registry that listed the information sought. *Id.* at 398. While the opinion did not explicitly establish that the documents requested were previously available, the case's prior history established that they were.

¶ 27 Accordingly, the circuit court held that FOIA did not require that WCC conduct database queries to create a new report for plaintiff.

¶ 28 The circuit court's final consideration was whether plaintiff's FOIA requests created an undue burden on WCC. The undue burden related to copying and redacting physical records, such as registration forms and new student information forms. The circuit court ultimately found that the production of thousands of heavily redacted student forms constituted a burden that outweighed the public's interest in obtaining the requested information.

¶ 29 For all these reasons, the circuit court granted WCC's section 2-619(a)(9) motion to dismiss plaintiff's complaint, based on affirmative matters defeating the claims.[1]

¶ 30 Plaintiff timely appealed.

¶ 31 II. ANALYSIS

¶ 32 A motion to dismiss pursuant to section 2-619(a)(9) of the Code admits the legal sufficiency of the complaint but asserts an affirmative matter that avoids the legal effect of or defeats the claim. *Donovan v. Community Unit School District 303*, 2015 IL App (2d) 140704, ¶ 15. Our review is generally *de novo*. *Law Offices of Nye & Associates, Ltd. v. Boado*, 2012 IL App (2d) 110804, ¶ 12. However, when the trial court grants the motion after an evidentiary hearing, "we review whether the trial court's findings of fact are against the manifest weight of the evidence while reviewing the questions of law *de novo*." *Id.*

---

[1]The court did not conclude that the complaint should be dismissed under section 2-619(a)(1) for lack of jurisdiction.

Plaintiff argues that the circuit court erred in dismissing his complaint. Plaintiff frames the issue as whether searching for and producing information from a database creates a new document. He argues that the circuit court erred when it held that the data residing in a public database or the database itself was not a public record under FOIA. He does not challenge the circuit court's ruling with respect to WCC's undue burden to produce physical records. We detail the components of plaintiff's argument in turn.

First, plaintiff argues that Illinois courts have held that FOIA applies to digital records. For example, in *Hamer v. Lentz*, 132 Ill. 2d 49, 56-57 (1989), our supreme court held that information stored on computer tape had to be made available to the plaintiff for inspection and copying. In ordering the defendant to disclose the requested information, the court suggested that, if necessary, the defendant would have to prepare a computer program to generate a hard copy of the information stored electronically. *Id.* at 56. In *Southern Illinoisan*, the plaintiff sought information stored in the defendants' cancer registry database, including zip codes, cancer types, and dates of diagnosis. *Southern Illinoisan*, 218 Ill. 2d at 394. There, the court held that the defendants had to disclose the requested information because the information was not exempt. *Id.* at 427. In *Kalven*, 2014 IL App (1st) 121846, ¶ 29, the appellate court held that records maintained in a database were public records because they were prepared, used, possessed, and controlled by a public body. Here, plaintiff is seeking individual data fields in WCC's databases, whereas the records of data sought in *Kalven* were already compiled (*id.* ¶¶ 4, 5). Plaintiff argues that this distinction does not alter the FOIA analysis because FOIA does not differentiate between compilations of data and individual data fields—both are public records that must be disclosed in response to a FOIA request. See Illinois Attorney General, *Illinois Freedom of Information Act Frequently Asked Questions By the Public* 5 (2010), http://www.illinoisattorneygeneral.gov/government/FAQ_FOIA_Public.pdf (public bodies have to perform searches of databases of information in response to FOIA requests).

Next, plaintiff argues that federal FOIA case law has consistently held that nonexempt data in a public body's database is a public record. Illinois's FOIA statute was modeled after the federal FOIA (*Roulette v. Department of Central Management Services*, 141 Ill. App. 3d 394, 400 (1986)), and case law interpreting the federal statute may guide Illinois courts interpreting the state statute (*Cooper v. Department of the Lottery*, 266 Ill. App. 3d 1007, 1012 (1994)). In case law interpreting the federal FOIA, courts have found that individual pieces of data residing in a database are subject to disclosure. *National Security Counselors v. Central Intelligence Agency*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012) ("In responding to a FOIA request for 'aggregate data' *** an agency need not create a new database or a [*sic*] reorganize its method ***, but if the agency already stores records in [its] electronic database, searching that database does not involved [*sic*] the creation of a new record."). Additionally, "fields of data" in a database, which are what plaintiff is requesting here, are subject to FOIA. *Long v. United States Department of Justice*, 450 F. Supp. 2d 42, 48 (D.D.C. 2006). A public body may even be compelled to turn over an entire database to the extent that the information is not exempt from disclosure. *National Security Counselors*, 898 F. Supp. 2d at 272.

Plaintiff continues that, in addition to digital records being subject to disclosure and federal courts permitting disclosure of data from databases, we would thwart the purposes of FOIA if we hold that data in a database is not a public record. The circuit court made a distinction between individual fields of data in a database and the compilation of the same data in a single

document or report—holding that the latter was a public record and the former was not. Plaintiff argues that this distinction was erroneous and, if upheld, would allow a public body to evade FOIA simply by storing data from a public record as individual fields of data in a database.

¶ 38    Plaintiff references Deligtisch's testimony from the evidentiary hearing, where he explained that electronic databases were created to allow for the easy storage and retrieval of information. He explained that databases could store massive amounts of data in an orderly fashion and that relational databases—like those WCC employed—stored data in a grid format, similar to an Excel spreadsheet. The information in WCC's databases, including zip codes and course numbers, was initially generated by students when they registered for classes. Registration was completed via an online form or a paper application. Regardless of the form used, the information was input into WCC's databases as individual entries of data, with each entry constituting a unique data field.

¶ 39    Plaintiff argues that inputting the information from student registration forms—which are public records under FOIA—did not destroy the public nature of the information or preclude its disclosure under FOIA. To hold otherwise would create an exception that would allow public bodies to evade FOIA obligations. That is, by storing the data from public records in a database, a public body like WCC could effectively shield that public information from any and all FOIA disclosure requests.

¶ 40    Plaintiff's final argument is that, alternatively, the information in WCC's databases is subject to disclosure because each database is a single public record. That is, if we were to hold that WCC's databases each constitute a single public record, FOIA would compel disclosure of the requested information. Federal courts have held that an entire database is subject to disclosure (*National Security Counselors*, 898 F. Supp. 2d at 272), and the Illinois Attorney General has stated that databases are public records under FOIA (*In re Michaelson*, 2002 Ill. Att'y Gen. Op. No. 02-009, at 1). Here, redaction of exempt information in each database would render the entire database responsive to plaintiff's requests. Just as a FOIA request for a hard copy of a document would require "masking" exempt information that is comingled with responsive, nonexempt information, WCC could comply with plaintiff's requests via a simple query command to prevent disclosure of comingled, exempt information.

¶ 41    Accordingly, plaintiff argues, the data fields in WCC's databases are public records, and producing the requested information is not creating a new record under FOIA.

¶ 42                                    B. WCC's Response

¶ 43    WCC responds with three primary arguments that the complaint was properly dismissed: (1) plaintiff did not request public records under FOIA, (2) the Illinois case law that plaintiff relies on is inapposite, and (3) it is unnecessary to look to federal case law for guidance in this case. We detail each argument as follows.

¶ 44    First, WCC argues that plaintiff's FOIA requests improperly sought documents that did not exist, and, under *Chicago Tribune*, 2014 IL App (4th) 130427, it was under no obligation to create new documents in response to the FOIA requests. In *Chicago Tribune*, the plaintiff sought various information that the defendant claimed it did not maintain in an accessible format. The appellate court agreed with the defendant, holding that the plaintiff did not seek public records as defined by FOIA. *Id.* ¶ 32. Rather, the plaintiff had requested that the defendant prepare a tally of claims made against certain license holders, which would have

- 8 -

required the defendant to create a new record. *Id.* ¶¶ 32, 36. Accordingly, the court held that the defendant did not have to respond to the plaintiff's FOIA request, because FOIA did not compel it to generate new records. *Id.* ¶ 37. WCC argues that plaintiff's requests here mirror the improper request made in *Chicago Tribune*, because plaintiff requested "total numbers" or tallies of information and compilations of data such as zip codes. Under *Chicago Tribune*, these requests would constitute the generation of new records, and FOIA does not compel WCC to create new records.

¶ 45 Second, WCC argues that plaintiff's Illinois case law does not address the issues that this case presents. WCC argues that *Kalven*, 2014 IL App (1st) 121846, ¶¶ 28-29, and *Southern Illinoisan v. Department of Public Health*, 319 Ill. App. 3d 979, 983 (2001), are distinguishable in that the data requested in both cases was readily available. Likewise, the records sought in *Hamer*, 132 Ill. 2d at 55-56, were maintained in the course of the defendant's business and thus were subject to disclosure. In contrast, plaintiff is requesting information that has not been compiled and stored in WCC's databases.

¶ 46 WCC further argues that the Attorney General's opinion in *In re Michaelson* is not on point. There, the Attorney General addressed whether the State Board of Elections voter registration database was exempt from disclosure under FOIA. He opined that it was not exempt from disclosure. However, WCC points out that the opinion did not include a discussion of the statutory exemptions for electronic data or personal and private information, which WCC raised in the circuit court and which applied to plaintiff's FOIA requests.

¶ 47 WCC argues that a more apt comparison to plaintiff's requests is found in *Chicago Tribune Co. v. Board of Education of the City of Chicago*, 332 Ill. App. 3d 60 (2002). There, the court held that the records requested were exempt from disclosure under section 7(1)(b)(i) of FOIA (5 ILCS 140/7(1)(b)(i) (West 2002)). [2] Because the data requested fell within a *per se* exemption, the defendant properly refused to disclose the information. *Board of Education*, 332 Ill. App. 3d at 69. WCC argues that, likewise, it invoked applicable *per se* exemptions pursuant to sections 7(1)(o) (information associated with automated data processing operations that, if disclosed, would jeopardize the security of the system or its data) and 7(1)(u) (information that might lead to disclosure of secret or confidential information) of FOIA, as well as private and personal exemptions protecting student registration forms under, respectively, sections 7(1)(b) and 7(1)(c).

¶ 48 Third, WCC argues that consulting federal FOIA law is unnecessary to resolve this appeal. WCC argues that federal authority is merely persuasive even when Illinois statutes are modeled after their federal counterparts and that it should be consulted only when Illinois lacks authority on point. See *Fitzgerald v. Chicago Title & Trust Co.*, 72 Ill. 2d 179, 184 (1978); *People v. Crawford Distributing Co.*, 53 Ill. 2d 332, 338-39 (1972) (looking to federal antitrust law for persuasive guidance on question arising under the Illinois Antitrust Act, because of a dearth of applicable Illinois precedent). WCC disagrees that *Roulette* and *Cooper*, which plaintiff argues support using federal law as a guide to interpreting FOIA, control here. Rather, WCC argues that *Fitzgerald* and *Crawford* control because *Roulette* and *Cooper* addressed FOIA issues different from those presented in this appeal.

---

[2]Section 7 of FOIA has been amended since *Chicago Tribune* was published. The exemption for personal information that would constitute a "clearly unwarranted invasion of personal privacy" is now found in section 7(c) (5 ILCS 140/7(c) (West 2014)).

¶ 49    WCC argues that, even if we were to consider plaintiff's federal authority, that authority actually supports WCC's position. For instance, the court in *National Security Counselors* noted a tension between, on the one hand, searching a database and, on the other hand, creating a new record or conducting research. *National Security Counselors*, 898 F. Supp. 2d at 270-71. This distinction between searching and either creating records or performing research remained "somewhat muddled." *Id.* at 270. The court explained that producing a listing or index of records was different from producing particular points of data, which were the equivalent of the records themselves. *Id.* at 271. "This is because a particular listing or index of the contents of [the] database would not necessarily have existed prior to a given FOIA request." *Id.* WCC argues that this holding conforms with its position that a public body does not have to compile information in response to a FOIA request.

¶ 50    WCC next addresses plaintiff's reliance on *Long*. While plaintiff claims that *Long* holds that individual fields of information in databases are subject to disclosure under FOIA, WCC argues that the issue in *Long* was whether exemptions applied to records that the defendant already maintained, not whether the defendant was required to create records that it did not already maintain. See *Long*, 450 F. Supp. 2d at 53-80 (analyzing multiple claimed exemptions). By contrast, WCC argues, exemptions apply here and plaintiff is improperly requesting that it create new records.

¶ 51    WCC concludes that, "[q]uite simply, there are no reports setting forth the information as requested by plaintiff in either paper or electronic format." And under FOIA, it is under no obligation to respond to plaintiff's requests by creating a new record that it did not previously prepare or maintain.

¶ 52                                C. Our Resolution

¶ 53    The purpose of FOIA is to "open governmental records to the light of public scrutiny." (Internal quotation marks omitted.) *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 405 (2009). The legislature adopted FOIA to provide the public with access to public records, in order to promote transparency and accountability in government. 5 ILCS 140/1 (West 2014) (delineating public policy and legislative intent behind FOIA). Under FOIA, public records are assumed to be open and accessible, and we liberally construe the statute in order to provide the public with easy access to government information. *Better Government Ass'n v. Zaruba*, 2014 IL App (2d) 140071, ¶ 19. Statutory exemptions to disclosure are to be interpreted narrowly so as not to defeat FOIA's purpose. *Southern Illinoisan*, 218 Ill. 2d at 416.

¶ 54    Whether a statutory exemption applies is not at issue on appeal. WCC invoked exemptions pursuant to sections 7(1)(o) and 7(1)(u) (5 ILCS 140/7(1)(o), 7(1)(u) (West 2014)), related to disclosure of its entire databases. However, the dismissal of the complaint was based on plaintiff's February 14, 2013, FOIA requests, which did not seek WCC's entire databases. WCC also invoked private and personal exemptions pursuant to sections 7(1)(b) and 7(1)(c), related to disclosure of student registration forms, but it admits that such forms could be redacted to display only nonexempt information. Importantly here, the requests at issue are not for the physical copies but for the zip codes, numbers of registered students, and raw input for the fields of the cities, counties, citizenship, and visa statuses of registered students. These

specific requests do not implicate the definition of "private information" under section 2(c-5).[3] Rather, plaintiff specifically seeks nonexempt information stored in WCC's databases.

¶ 55    Also not at issue is whether plaintiff's requests constituted an undue burden on WCC. The issue of an undue burden, as addressed in the circuit court's order, pertained to plaintiff's requests for physical records, and plaintiff's appeal relates only to his requests for electronic records from WCC's databases. Furthermore, it is not disputed that WCC is a "public body" under FOIA (5 ILCS 140/2(a) (West 2014)).

¶ 56    Finally, there is no jurisdictional issue. WCC argued in its motion to dismiss that plaintiff did not present a case or controversy necessary to establish jurisdiction, because plaintiff was not denied access to any public records. This argument put the cart before the horse: at issue is whether the information sought constitutes public records.

¶ 57    Whether the dismissal of plaintiff's complaint was proper depends on the following two issues: (1) whether the data on WCC's databases constitutes public records and (2) whether plaintiff's FOIA requests required WCC to create new records. We first address whether WCC's databases, and the data therein, are public records. FOIA defines "public records" as:

> "[A]ll records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, tapes, recordings, electronic data processing records, electronic communications, recorded information and all other documentary materials pertaining to the transaction of public business, regardless of physical form or characteristics, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2014).

For information or documentation to qualify as a "public record" under the plain language of section 2(c), it must (1) pertain to the transaction of public business and (2) have been one of the following: (a) prepared by a public body, (b) prepared for a public body, (c) used by a public body, (d) received by a public body, (e) possessed by a public body, or (f) controlled by a public body. See *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, ¶ 30 (considering whether electronic communications sent by city council members via personal devices during a city council meeting were public records under FOIA). The definition of "public records" is "expansively defined" (*Stern*, 233 Ill. 2d at 405), and FOIA is accorded a liberal construction (*id.* at 411). In this expansive definition of "public records," the legislature recognizes that information or documentation may be stored in myriad media, some physical and some not. Illinois case law has long held that electronic records may be public records subject to FOIA. See *Hamer*, 132 Ill. 2d at 55-57 (affirming disclosure of records stored on computer tape).

¶ 58    The circuit court was not persuaded that data points in a database were public records. For example, in the circuit court's view, a copy of a registration form stored electronically as a PDF file would be a public record, but the entry into a WCC database of a zip code, which may

---

[3]FOIA defines "private information" as "unique identifiers, including a person's social security number, driver's license number, employee identification number, biometric identifiers, personal financial information, passwords or other access codes, medical records, home or personal telephone numbers, and personal email addresses." 5 ILCS 140/2(c-5) (West 2014). It also may include, with exceptions, "home address and personal license plates." *Id.*

have been included in that registration form, would not. It saw plaintiff's position as greatly expanding the definition of "public record" by applying it to individual data points.

¶ 59    As we explain, we disagree with the circuit court's view. It is important to recognize that a database, by its nature, functions differently than a traditional physical record. To this end, the circuit court was correct that *Kalven* and *Southern Illinoisan* did not provide conclusive guidance as to data stored on databases. In *Southern Illinoisan*, 218 Ill. 2d at 393-94, the plaintiff sought *documents* relating to the incidence of cancer, which were located on the defendants' cancer registry. In *Kalven*, 2014 IL App (1st) 121846, ¶ 1, the plaintiff again sought *documents*, this time related to police misconduct. The circuit court here did not disagree that electronically stored documents were subject to FOIA. *Kalven* and *Southern Illinoisan* clearly required the disclosure of electronic records under FOIA. Rather, it disagreed that points of data stored in a database constituted public records, because FOIA does not compel disclosure of general data, information, or statistics. *Chicago Tribune Co.*, 2014 IL App (4th) 130427, ¶ 33. The question, therefore, is whether data fields or points of data—as opposed to complete reports or listings—stored electronically are subject to FOIA.

¶ 60    Illinois case law does not provide direct guidance regarding disclosure of data stored in a database. Therefore, we agree with plaintiff that we may turn to federal case law for guidance. *State Journal-Register v. University of Illinois Springfield*, 2013 IL App (4th) 120881, ¶ 21 (when a novel Illinois FOIA issue arises, courts often look to cases interpreting the federal FOIA statute); see *Crawford Distributing Co.*, 53 Ill. 2d at 338-39 (explaining that federal law can provide nonbinding guidance when Illinois has a dearth of law on point). Not only is there a dearth of Illinois case law on point, but also our legislature patterned FOIA after the federal FOIA, and it is established that in interpreting our FOIA we may look to federal case law construing the federal statute. *Cooper*, 266 Ill. App. 3d at 1012; *Roulette*, 141 Ill. App. 3d at 400; *cf. Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, ¶ 40 (finding it well settled that we may consider federal case law for guidance on class action issues because the Illinois class action statute was patterned after Rule 23 of the Federal Rules of Civil Procedure). It is therefore appropriate that we consider federal authority to aid our analysis, but we are not bound by that authority.

¶ 61    Turning to federal case law, federal courts have found that databases—which house aggregations of data and do not merely store documents—are subject to FOIA disclosure. See *Multi Ag Media LLC v. Department of Agriculture*, 515 F.3d 1224, 1226, 1233 (D.D.C. 2008) (USDA crop data database was not exempt from FOIA disclosure); *Long*, 450 F. Supp. 2d at 86-87 (ordering release of nonexempt data fields from the defendant's database).

¶ 62    Particularly helpful here is the district court's discussion of federal FOIA (FFOIA) requests for "aggregate data" in *National Security Counselors*. The dispute involved specific denials of requests for records as well as challenges to the CIA's overarching policies and practices. *National Security Counselors*, 898 F. Supp. 2d at 242. One policy that the plaintiff complained of was the CIA's refusal to process FFOIA requests for "aggregate data," such as database listings. *Id.* at 243. The CIA denied such requests either because an adequate search would require unreasonable effort or because FFOIA did not require that it create new records, conduct research, or analyze data. *Id.* at 269. The district court noted that the CIA was correct that FFOIA imposed no duty to create new records. *Id.* Rather, in dispute was whether the plaintiff's FFOIA requests for aggregate data actually required it to create new records or conduct research. *Id.*

¶ 63    The court held that an agency need not create a new database or reorganize its method of archiving data to respond to a FFOIA request. *Id.* at 270. However, if the agency already stores information in a database, searching the database does not create a new record. *Id.* Likewise, sorting a database to make information intelligible does not create a new record because " '[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information.' " *Id.* (quoting H.R. Rep. No. 104-795, at 22 (1996)). Sorting a database by a particular data field, such as date, category, or title, is just another form of searching that is within the scope of an agency's duty to respond to FFOIA requests. *Id.* In reaching these conclusions, the district court considered the 1996 amendments to FFOIA, which provided context for agencies in responding to FFOIA requests in an increasingly computerized age. *Id.* at 269. Instructive amendments were the expansion of the definition of "record" to include information "in any format including an electronic format" and the expansion of the definition of "search" to include review "by automated means." *Id.* at 270.

¶ 64    Nevertheless, the district court noted that the distinction between, on the one hand, searching the database and, on the other hand, creating new records or performing research was "somewhat muddled." *Id.* A tension existed between the "well-settled prohibition" on requiring public bodies to create new records and the effort to make the contents of electronic databases accessible to FFOIA requests. *Id.* "When points of data are stored in a database, that data can often be manipulated in myriad ways, only some of which are likely to qualify as mere 'searching' within the meaning of [FFOIA]." *Id.* The problem was drawing the line between searching a database and creating new records or conducting research. *Id.* at 270-71.

¶ 65    The district court continued by providing an example of each. On the one hand, "producing particular points of data" was proper, as these were "the records themselves." *Id.* at 271. On the other hand, producing a listing or index of database search results was the creation of a new record. *Id.* This was because the listing or index did not exist before the FFOIA request. *Id.* However, the agency would have to release the nonexempt records themselves, if requested. *Id.* Accordingly, the district court drew the following distinction: A FFOIA request for a listing or index of a database's contents that seeks information about those contents, as opposed to the contents themselves, requests a new record. *Id.*

¶ 66    The district court ultimately held that the plaintiff had not stated a claim against the CIA concerning its aggregate data policy. *Id.* at 272. This was because the plaintiff's single request for the underlying records (the plaintiff also made requests for database listings, which, as discussed, were improper) was insufficient to allege the existence of a CIA policy or practice to refuse to produce the contents of electronic databases. *Id.* The district court concluded its discussion of aggregate data by pointing out that, although the CIA could refuse to produce database listings, FFOIA actually required it to produce, on request, the contents of entire databases to the extent that those contents were not exempt from disclosure. *Id.* Therefore, it suggested, it might be in the CIA's interest to produce database listings upon request, because that would be less burdensome than prompting FFOIA requesters to instead seek the reams of data underlying those listings. *Id.*

¶ 67    We find the district court's logic persuasive, and for the following reasons we hold that the data in WCC's databases are "public records" under FOIA, so long as the data pertain "to the transaction of public business" and were "prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." See 5 ILCS

140/2(c) (West 2014) (providing the definition of "public records"). Similar to the 1996 FFOIA amendments, our statute explicitly provides that "public records" include "reports, forms, writings, *** electronic data processing records, electronic communications, recorded information and all other documentary materials pertaining to the transaction of public business, *regardless of physical form or characteristics*." (Emphasis added.) *Id.* "Public records" are clearly not limited to physical documents—audio recordings, for example, can be public records. See *DesPain v. City of Collinsville*, 382 Ill. App. 3d 572, 579 (2008) (holding that the plaintiff was entitled to inspect the original audiotapes of recordings of city council meetings). Furthermore, "copying" under FOIA means the "reproduction of any public record by means of any photographic, *electronic*, mechanical or other process *** developed and available to the public body." (Emphasis added.) 5 ILCS 140/2(d) (West 2014).

¶ 68        It is clear, therefore, that FOIA comprehends that records will be stored and reproduced electronically. It is also clear that Illinois courts permit disclosure of electronic records under FOIA. See, *e.g.*, *City of Champaign*, 2013 IL App (4th) 120662, ¶ 43 (city council members' communications on personal electronic devices during city council meetings were subject to FOIA disclosure). Plaintiff's argument—that distinguishing between individual data points and compilations of data in a discrete document would thwart the purposes of FOIA—is well taken. Databases are crucial to a world with ever-increasing generation of, and use for, data. Yet, by making a distinction between compiled electronic records and the raw data in a database, the circuit court effectively authorized shielding public information from disclosure by merely inputting the data into a database, instead of continuing to store individual registration forms, electronically or otherwise. WCC should not be able to input information from public records into a database and, in turn, shed its duty to disclose that same information under FOIA.

¶ 69        Contrary to WCC's argument, the Attorney General's opinion in *In re Michaelson* supports our holding. The Attorney General opined that a database was subject to FOIA disclosure. *In re Michaelson*, 2002 Ill. Att'y Gen. Op. No. 02-009, at 1. In fact, it was undisputed that the State Board of Elections voter registration database was a public record under section 2(c) of FOIA (5 ILCS 140/2(c) (West 2002)). *In re Michaelson*, 2002 Ill. Att'y Gen. Op. No. 02-009, at 2. The only dispute was whether any exemptions from disclosure applied, and the Attorney General opined that the database was not exempt from disclosure. *Id.* at 4.

¶ 70        Here, the distinction between compiled records, such as student registration forms, and the data from those records entered in a database is a distinction of form, not substance. We are to accord FOIA a liberal interpretation, aligned with our public policy favoring transparent and accountable government. See *Zaruba*, 2014 IL App (2d) 140071, ¶ 19. WCC input data from student registration forms into its Banner and Driver Safety databases. Felton confirmed that information responsive to plaintiff's requests resided in the databases, and Deligtisch testified that the databases were designed to be searched for the responsive data plaintiff sought. The databases were akin to giant Excel spreadsheets, storing and organizing information as WCC saw fit. In fact, WCC used Banner for "every major function," including finance, financial aid, student records, and inventory. See 5 ILCS 140/2(c) (West 2014). To hold that this data stored on WCC's databases does not constitute public records would ascribe too rigid a definition to "public records" and would contravene the purpose of FOIA to promote governmental transparency and accountability. Accordingly, data in WCC's databases constitutes public records under FOIA because such data is clearly "recorded information *** pertaining to the

transaction of public business *** prepared by *** being used by *** or under the control of [a] public body." 5 ILCS 140/2(c) (West 2014).

¶ 71    Moreover, the distinction between a database and its individual data points for purposes of what constitutes a public record is a red herring. A database is an aggregation of data, not a discrete document. Data may continuously be input into the database, deleted from it, reorganized, reproduced, and manipulated. The common characteristics of public records are that they are information or documentation pertaining to a public body's operation that the public body prepared, used, or had under its control. See 5 ILCS 140/2(c) (West 2014); *cf. Reppert v. Southern Illinois University*, 375 Ill. App. 3d 502, 506-07 (2007) (employment contracts that met the definition of "public records" under FOIA were not shielded from disclosure merely by being physically stored in an exempt personnel file). Here, the data is information generated and stored by WCC and pertaining to WCC's business as a public body. Therefore, the data is a public record. A request for the entire databases is no more than a request for all of the data. That is, each database is subject to FOIA only insofar as the data is information pertaining to public business that WCC prepared, used, or controlled. Deligtisch's analogy to file cabinets is helpful: the database is akin to a file cabinet, and the data that populates the database is like the files. FOIA permits a proper request for a single file, some of the files, or all of the files.

¶ 72    Having decided that data in WCC's databases constitutes public records, we turn to whether plaintiff's requests required WCC to generate new records. Generally, a request to search and produce data stored in a database is not a request to generate a new record. See *Hamer*, 132 Ill. 2d at 56 (FOIA required a public body to create a computer program, if necessary, to generate a hard copy of information stored on computer tape); *National Security Counselors*, 898 F. Supp. 2d at 270 (searching a database does not create a new record, and sorting a database by a particular field is one way of searching). In order to reproduce the records in the database, it is necessary to search the database for responsive data.

¶ 73    An electronic search that the public body can perform meets the definition of "copying" under FOIA. 5 ILCS 140/2(d) (West 2014) (" 'Copying' means the reproduction of any public record by means of any photographic, electronic, mechanical or other process *** now known or hereafter developed and available to the public body."). In fact, our Attorney General advises that public bodies must perform searches of their databases for information responsive to FOIA requests. Illinois Attorney General, *Illinois Freedom of Information Act Frequently Asked Questions By the Public* 5 (2010), http://www.illinois attorneygeneral.gov/ government/FAQ_FOIA_Public.pdf (public bodies have to perform searches of databases of information in response to FOIA requests). A computerized search is necessary because a database is an electronic aggregation of data, and the data is the stored records. See *National Security Counselors*, 898 F. Supp. 2d at 270 (Congress understood that computer records in a database might require application of code to retrieve the information).

¶ 74    However, our analysis does not end here. While a search for data on WCC's databases is permissible under FOIA because the data constitutes public records, we acknowledge the tension cited in *National Security Counselors* between, on the one hand, performing a search and, on the other hand, creating a new record or performing research. Therefore, we must determine whether plaintiff's requests improperly sought creation of a new record.

¶ 75    WCC relies on *Chicago Tribune*, 2014 IL App (4th) 130427, to argue that plaintiff did not request mere searches but instead requested that it generate new records. There, the appellate

court reasoned that, although FOIA provided a right of access to public records, the plaintiff was not seeking disclosure of public records as defined by FOIA. *Id.* ¶ 31. The plaintiff was essentially requesting that the defendant compile the number of initial claims and complaints received against licensed physicians. *Id.* ¶ 36. Importantly, the defendant did not maintain a record of the requested number of claims. *Id.* FOIA did not require that the defendant answer the plaintiff's " 'general inquiry question,' " which was more akin to an interrogatory in a civil action than a request for records under FOIA. *Id.* ¶¶ 32, 36. If a document in response to the plaintiff's request already existed, it would have been subject to FOIA, but FOIA was not designed to compel the compilation of data not ordinarily kept by the public body. *Id.* ¶ 34 (quoting *Kenyon v. Garrels*, 184 Ill. App. 3d 28, 32 (1989)). In order to answer the general inquiry, the defendant would have needed to create a new record, and therefore it did not have to answer the plaintiff's request. *Id.* ¶ 37.

¶ 76    The holding in *Chicago Tribune* is consistent with the rationale of *National Security Counselors*, which we have followed thus far. There, the district court held that producing a listing of a database search—such as a listing of the first 100 FOIA requests in a given year—was the creation of a new record. *National Security Counselors*, 898 F. Supp. 2d at 271. A requested listing, unlike requested particular points of data from a database, did not exist prior to a FOIA request. *Id.* A request for a listing sought information about public records; it did not seek the records themselves. *Id.*

¶ 77    A listing of search results is analogous to a tally of the number of complaints in *Chicago Tribune*. Both are information about or derived from public records. Neither existed prior to a FOIA request. Both require the public body to answer the requester's general inquiry as opposed to disclosing public records.

¶ 78    Turning to plaintiff's February 14, 2013, FOIA requests, the circuit court identified five requests that improperly sought the creation of new records. They were plaintiff's requests (4), (9), (10), (11), and (12), which respectively requested the total number of registered students without social security numbers in the fall of 2011; the total number of registered students by year from 1995 to 2008; the total number of registered students by year taking ESL classes from 1995 to 2008; the total number of registered students by year taking ABE/GED classes from 1995 to 2008; and the total number of registered students from 1995 to the present taking classes at specified off-campus locations.

¶ 79    We agree with the circuit court that these requests, as well as request (13), for the total number of all out-of-district students in the fall of 2011, improperly required WCC to create new records. Importantly, WCC did not maintain the requested totals in its databases. Nevertheless, plaintiff asked WCC to compile tallies of students, just as the plaintiff requested tallies in *Chicago Tribune*, 2014 IL App (4th) 130427, ¶¶ 32, 36. Plaintiff's requests went beyond a search for records—that is, the data in the databases—and instead improperly sought information about those records. *National Security Counselors*, 898 F. Supp. 2d at 271. At oral argument, plaintiff conceded that these requests were improper. Nevertheless, we note that FOIA does not necessarily preclude the disclosure of the underlying information sought in these six requests. Rather, it was the form of the requests—seeking totals instead of the underlying records—that was improper. As plaintiff argued at oral argument, requests for totals as opposed to the underlying records might be easier for WCC to respond to. FOIA does not require that WCC respond to these six requests, but it also does not preclude its response.

¶ 80 Plaintiff's remaining requests—for zip codes of students in particular classes in particular years, "raw input" for specifically identified fields on the student registration forms from particular years, a copy of the WCC charter, and the mailing addresses of WCC trustees—do not involve the creation of new records. Rather, these requests require only a search of WCC's Banner and Driver Safety databases for information that was already compiled. The zip codes and "raw input" requests will require computerized searches of the databases that might involve the creation of code, but our supreme court has held that an agency may be required to create a computer program to retrieve electronic information. *Hamer*, 132 Ill. 2d at 56. Furthermore, the application of such code or programming to retrieve stored information, or to sort a database by particular data fields (*e.g.*, by zip code or "raw input" for a specific registration-form field), does not create a new record. See *National Security Counselors*, 898 F. Supp. 2d at 270.

¶ 81 Both Felton and Deligtisch testified that conducting the necessary searches was possible. In particular, Felton testified that Banner tracked student zip codes, as well as what courses students took and when they took them. Deligtisch testified that searching across these different data fields was not only possible but was the purpose of relational databases, such as Banner and the Driver Safety database. For example, plaintiff's request (2) was for the zip codes of all persons taking GED classes at the Aurora campus in the fall of 2011. Per the testimony of Felton and Deligtisch, a request for the zip codes within the set parameters was a request for information already present in Banner. Therefore, the request did not involve creating a new record. Importantly, plaintiff did not request new information or information about the zip codes, nor did he request an answer to a general inquiry question. Rather, he sought a specific type of compiled data—zip codes—for certain persons at WCC. The same logic applies to the other requests for zip codes and the requests for "raw input."

¶ 82                                    III. CONCLUSION

¶ 83 The circuit court erred in dismissing plaintiff's complaint as it related to his requests (1) through (3) and (5) through (8), because data on WCC's Banner and Driver Safety databases constitute public records under FOIA, and the requests require searches for information already stored and would not require creating new records. However, the circuit court properly dismissed plaintiff's requests (4) and (9) through (13), which sought total numbers of students, because these requests would require that WCC create new records. We therefore affirm in part and reverse in part the section 2-619 dismissal and remand for further proceedings consistent with this opinion.

¶ 84 Affirmed in part and reversed in part; cause remanded.